## Powers *v.* Black et al., Appellants.

*Principal and agent—Real estate brokers—Purchase by agent.*

A firm of real estate brokers who agree to sell land for another cannot sell the land to one of their own employees, although they may have previously used every effort to sell the land to other persons. If they permit their employee to purchase the land, they are bound to account to the owner for all the profits which the employee may have made out of the transaction, although they themselves may not have participated in the profits.

Argued Nov. 1, 1893.    Appeal, No. 225, Oct. T., 1893, by defendants, David P. Black, Milton I. Baird and J. Ledlie Gloninger, partners trading as Black & Baird, and Galen C. Hartman, from decree of C. P. No. 1, Allegheny Co., Sept. T., 1891, No. 407, in favor of plaintiff, Charles L. Powers.    Before

STERRETT, C. J., GREEN, WILLIAMS, MITCHELL, DEAN and THOMPSON, JJ.

Bill in equity for account.

The case was referred to J. T. Myler, Esq., as master, from whose report it appeared that on April 1, 1890, plaintiff, appellee, by a written application constituted Black & Baird, one of appellants, his agents to sell twenty-three lots of ground, at a minimum price of $2,000 as a whole. Black & Baird thereupon placed the property in the hands of two of their employees, Smith and Haas, for sale. Smith, after some negotiation, arranged a sale to one Strong, on or about June 23, 1890, for $2,300, terms cash on delivery of deed Aug. 23, 1890. Strong paid $100 hand-money, and signed: (1) a written contract, which provided for the purchase by Strong of the Powers lots for $2,300, cash on delivery of the deed, Aug. 23, 1890; and (2) an application to Black & Baird for a mortgage of $1,500 on the Powers lots, and $800 on another property owned by Strong. Appellee alleged, and the master found, that the agreement by Strong to purchase the Powers lots was signed on the promise of Smith that Black & Baird would place these mortgages to secure the purchase money. The article of agreement having thus been made on July 19, 1890, Smith sold two of the lots for Strong to one Peterman for $600, receiving $25.00 hand-money, and entered into a written contract for delivery of deed on or before Aug. 21, 1890. Meanwhile the applications of Strong for the mortgages above recited came into the office of Black & Baird and were placed in the hands of Galen C. Hartman, one of appellants, to be negotiated; he having an office with Black & Baird and being engaged partly in placing mortgages for them on commission, and partly in the practice of law on his own account. The master found as a fact that Hartman was an employee of Black & Baird. Hartman made several unsuccessful attempts to place the mortgages, but failed. Strong thereupon told Smith to make application elsewhere, which he did, but failed. Strong then told Smith " to do the best he could to save him his $100 hand-money, as he was unable to raise the cash to fulfill his contract." Smith told him he would do his best.

Smith afterwards arranged with Hartman to take an assign-

ment of the Strong agreement, and, on Aug. 21, 1890, went with Strong to the office of Black & Baird, where they met Hartman; and it was agreed that Strong should assign to Hartman his agreement for the purchase of the Powers lots, and Strong thereupon assigned the agreement to Hartman; also, his agreement for the sale of the two lots to Peterman for $600; and it was then agreed that Strong should purchase ten of the lots from Hartman at the price of $600, of which the $100 hand-money he had paid on the Powers agreement was to be a part, and that Black & Baird should furnish him $600 on a mortgage on his property in Merrimans alley free of charge.

By deed, dated Aug. 23, 1890, Powers conveyed the lots in question to Galen C. Hartman, in pursuance of the agreement made with Strong. While the deed was made to Hartman alone, it appears (and the master so found) that one S. H. McKee furnished one half the purchase money, and was jointly interested in the purchase with him, and received one half of the profit subsequently made. McKee had no connection with Black & Baird. Hartman subsequently exchanged the remaining eleven lots with Edward House, Jr., for other property in the Fourteenth ward, Pittsburgh, which he subsequently sold.

Prior to the assignment of his agreement by Strong to Hartman, plaintiff called upon Black & Baird, when he learned of the agreement for sale to Strong, and of the payment of $100 hand-money which he demanded and received from Black & Baird. Plaintiff alleged that, at the time of the execution of his deed to Hartman, he had no knowledge of Hartman's connection with Black & Baird; nor of Strong's agreement to purchase the ten lots from Hartman; nor of the agreement for sale of the two lots to Peterman; and contended that it was the duty of Black & Baird to notify him of the inability of Strong to fulfill the terms of his agreement, and of the arrangement for its assignment by Strong to Hartman, and the terms upon which this was made; that, by reason of the relationship existing between Black & Baird, his agents, and Hartman, Hartman was incompetent to take an assignment of the agreement from Strong; and, having done so, appellants, Black & Baird and Hartman, were responsible to plaintiff for any profits made by them or either of them out of said property, and are to be held as his trustees therefor.

The master, citing Ruckman v. Bergholz, 37 N. J. L. 437; Gardner v. Ogden, 8 Smith, N. Y. 327; Beeson v. Beeson, 9 Pa. 279; Randall v. Errington, 10 Vesey, 423; Bennett's Case, 10 Ves. 381; Darlington's Ap., 86 Pa. 518; Hill v. Frazier, 22 Pa. 324; Rosenberger's Ap., 26 Pa. 67, found that in the purchase of the real estate by Hartman, with the knowledge and assistance of the firm of Black & Baird, and its subsequent sale to said William E. Strong, William H. Peterman and Edward House, Jr., defendants were acting as trustees for plaintiff, and that as such trustees they should have accounted to him for all moneys realized from said sales, with interest to the date of such account.

Upon exceptions to the master's report the court made a decree holding defendants accountable as trustees, and referring the case back to the master to state an account. [13]

The opinion of the court below was in part as follows, by SLAGLE, J.:

" Black & Baird certainly failed in their duty to their client. Even if the sum of $2,000, mentioned in the authority to sell, was a fixed price and not the minimum price, as alleged by Powers, it would have been their duty, as his agents, to procure the highest obtainable price, and being authorized to sell for cash their right to make a conditional contract without his knowledge was doubtful. But when that arrangement failed, and a new purchaser was presented, the circumstances were materially changed. They had arranged for the sale of about half the property for $1,200, leaving the most valuable part unsold. They could not, in justice to him, make a sale upon the same terms, without first informing him of the changed conditions. Having the opportunity to sell this part at the price offered, he might have preferred to hold the rest. If under these circumstances they had procured a conveyance to a stranger, it would have been in disregard of their duty. Being made to one of their own employees, who had knowledge of the business, it was in clear violation of the rights of the owner and voidable by him. They must, therefore, be held as trustees, and having united in the wrongful act must answer jointly. If the property remained in the control of the parties, or either of them, the appropriate remedy would be a reconveyance. But it appears that it has all been conveyed to innocent parties, and the only remedy is an account of the proceeds or value.

The master does not find that the defendants are guilty of actual fraud in the transaction.   On the contrary, the evidence shows that Black & Baird received nothing out of the proceeds except commissions, and had no other interest unless it was to have the $100 paid by Strong ; which, under their agreement with him, they might have been compelled to refund, and which they had paid to Powers and might not have been able to recover from him.   It is probable the parties acted under the mistaken idea, expressed by Mr. Baird, that if they secured to the owner the price which he was willing to accept, it did not matter to whom the sale was made.   That if they chose they could take the title to themselves, and reap all the increase made by resale.   However this may be, there was no sufficient evidence of actual fraud, and we are of opinion that none was intended. The measure of liability in such case would be the value of the property when disposed of by defendants, and, in absence of fraud or lax faith in sales, this would be ascertained by actual proceeds : Greenwood's Appeal, 92 Pa. 181 ; Dilworth's Appeal, 108 Pa. 92.   The defendants should, therefore, be charged with money actually received, and credited with all proper disbursements on account of the property.   As a portion of the property was disposed of in trade, the price would be the actual value of the property received in exchange.   As to this, the consideration in the deed would be prima facie, but not conclusive."

The master stated an account in accordance with the opinion of the court below, allowing credits for expenditures but not allowing commissions.

Exceptions to the master's second report, by Black & Baird, to disallowance of commissions and charge of proceeds of sale to exceptants, were dismissed by the court, and a [decree entered against Black & Baird and Galen C. Hartman jointly for $1,274.04.] [17]

*Errors assigned* were (1–12, 14–16) in overruling exceptions ; (13, 17) decrees, quoting exceptions and decrees.

*A. V. D. Watterson* and *A. W. Duff, A. M. Brown* and *A. B. Reid* with them, for appellants, cited: Migget's Ap., 109 Pa. 520 ; Pearsall v. Hirsh, 39 N. Y. 258 ; Russell's Ap., 15 Pa.

319; Nulton's Ap., 103 Pa. 286; Daniels Ch. Pr. & Pl. 983; Banking Co. v. Ry., 18 Q. B. D. 714; Freelander v. Ry., 130 U. S. 426; Allen v. Bank, 127 Pa. 51; Mitchell v. Grassweller, 13 Q. B. D. 243; Barwick v. English Joint Stock Bank, L. R. 2 Ex. Cas. 259; McClung v. Dearborne, 134 Pa. 406.

*Charles L. Powers*, for appellee, cited: Phillip's Ap., 68 Pa. 130; Sproull's Ap., 71 Pa. 137; Warner v. Hare, 154 Pa. 548; Kutz's Ap., 100 Pa. 75; Cake's Ap., 110 Pa. 65; Gaines v. Brockerhoff, 136 Pa. 195; Beaumont v. Wilkes-Barre, 142 Pa. 198; Aberdeen Ry. v. Blakie, 1 Macq. H. & C. 461; Fox v. Mackreth, 2 Bro. C. C. 400; Rosenberger's Ap., 26 Pa. 67; Persch v. Quiggle, 57 Pa. 247; 1 Lewin on Trusts, §§ 424, 487, 907; Bigelow on Fraud, 317, 321; Lowther v. Lowther, 13 Ves. 95; Dunne v. English, L. R. 18 Eq. 533; Gibson v. Jeyes, 6 Ves. 277; Bennett's Case, 10 V.es. 394; Morse v. Royal, 12 Ves. 373; Sanderson v. Walker, 13 Ves. 601; Rice v. Davis, 136 Pa. 439; 1 L. Cas. Eq., H. & W.'s notes, 210; Bigelow on Fraud, 303; Story on Agency, § 333; 1 A. & E. Enc. L. 377; Berryhill's Adm'x Ap., 35 Pa. 245; Pratt v. Patterson, 112 Pa. 475; Hemstead's Ap., 60 Pa. 423; Stehman's Ap., 5 Pa. 413; Baker's Ap., 120 Pa. 33; Norris's Ap., 71 Pa. 106.

PER CURIAM, December 30, 1893:

Both reports of the learned master, considered with special reference to the exceptions thereto recited in the first twelve, together with the fourteenth to sixteenth specifications inclusive, have satisfied us that neither of said fifteen exceptions should have been sustained, and hence there was no error in overruling them and entering the final decree.

In view of the established facts, there was no error in decreeing as complained of in the thirteenth specification, " that in the purchase and sale of the complainant's real estate by Galen C. Hartman, one of the respondents, as alleged in the bill and as found by the master, the said Galen C. Hartman and his co-respondents, Black & Baird, were trustees of the complainant and, as such, are accountable to him." The reference to a master to take and state an account of the dealings and transactions of and between the parties, etc., was a necessary result

of the trust relation ; and, on the coming in of the account, to which there were no valid exceptions, the final decree complained of in the seventeenth specification was rightly entered.

The questions involved were fully considered and correctly disposed of by the learned master and court below. In view of this, further discussion of them is unnecessary.

Decree affirmed and appeal dismissed with costs to be paid by appellants.