## In re: Matter of Anna C. Brinton, Weak Minded Person.

*Lunatics and weak minded persons—Petition to declare weak minded—Evidence—Sufficiency—Act of May* 28, 1907, *P. L.* 292.

A petition to appoint a guardian for an alleged weak minded person is properly refused, where the evidence falls short of exhibiting the clearness and strength which must be present when the extraordinary power, with which the Court is invested, is invoked to deprive the respondent of the right to administer her own affairs.

Purchases of trivial articles by the respondent, the conveyance of a house to a daughter with whom she lived, and the implicit confidence in a son who imposed upon his mother's trust, are not sufficient reasons for the appointment of a guardian.

Argued April 22, 1925.  Appeal No. 179, April T., 1925, by George Brinton, from decree of C. P. Lawrence County, December T., 1924, M. D. No. 24, in the matter of a petition for a decree declaring Anna C. Brinton a weak minded person.  Before HENDERSON, TREXLER, KELLER, LINN and GAWTHROP, JJ.  Affirmed.

Petition under the Act of May 28, 1907, P. L. 292, for the appointment of a guardian of an alleged weak minded person.  Before EMERY, P. J.

The facts are stated in the opinion of the Superior Court.

The Court dismissed the petition.  George Brinton, one of the petitioners, appealed.

*Error assigned* was the decree of the court.

*Norman J. Martin,* and with him *Norman A. Martin,* for appellant.

*William E. Porter,* and with him *Charles G. Martin,* for appellee.

OPINION BY HENDERSON, J., July 9, 1925:

The proceeding under consideration was begun on the petition of three of the six children of Anna C. Brinton. The appeal was taken by one of them. Mrs. Brinton possesses an estate estimated to be worth $89,500, consisting of a large farm, a considerable number of lots, and several buildings in the City of New Castle. The evidence of mental weakness on which the appellant seems to rely relates: (1) to the purchase by Mrs. Brinton of a number of necklaces and bead bags while she was spending the winter in Florida with a daughter and another relative; (2) the conveyance by Mrs. Brinton of a house and lot occupied by herself and husband to a daughter and her husband; (3) the signing by Mrs. Brinton of two deeds, one for ten acres and one for forty acres of land owned by her, and also a note for $20,000, all of which she gave to her son George.

With respect to the necklaces, they were estimated to have a value of $1.50 to $5 each, and the bags, six or seven in number, a value from $5 to $15 each. Some of these were given to friends in Florida and to grandchildren and nieces. They were such articles as are commonly bought by persons visiting summer resorts or seaside places. The purchases were not at all out of proportion to the income of Mrs. Brinton and were indicative of a kindly disposition rather than of an incapable mind.

The conveyance of the house and lot referred to was made for a consideration of $1,000 represented by a note which the daughter held against her mother and a mortgage securing to the mother and her husband

their support during their respective lives. The daughter and her husband lived in the same house with Mrs. Brinton. The latter desired to have a sun porch built on the house and repairs thereon were necessary. A part of the arrangement for the conveyance was that the son-in-law would cause the porch and the repairs to be completed at his expense which was done at an outlay of about $5,000. Mrs. Brinton and her husband were to have their home in the building during their lives and a mortgage was to secure the provision for maintenance. The house before the repairs were made was estimated to be worth $12,000. The mortgage was given as agreed on; the arrangement was satisfactory to Mrs. Brinton and was one not infrequently made by parents advanced in years in favor of children, or to avoid the responsibility of the care of property. The house was not income-producing and the good faith of the transaction has not been successfully attacked.

The signing of the two deeds and the note for $20,000 came about in this way—the appellant, a son of Mrs. Brinton, desired, as he alleged, to test her mental capacity to transact business and for the purpose prepared the deeds and the note. He stated to his mother that the deeds were each for a lot and the note was supposed by her to be a check for a few hundred dollars which the son asked her to let him have. She signed the papers without reading them, relying on the verity of his statement as to what they were. The action of the son was evidently taken for the purpose of producing evidence to be used in the contemplated proceeding against the mother. The transaction exhibits an apparently unwarranted confidence of the mother in the integrity of her son, but this confidence is not to be confused with weakness of mind. It is a natural and praiseworthy disposition of a mother to have confidence in her children and to accept their statements as true. It is not unreasonable that out of

her large acreage she should be willing to give to her son or her daughter a vacant lot, or that she should be willing to give to her son a check for a small sum at his request. It is admitted that she did not read the papers which she signed and it is clear that she was imposed on by a misrepresentation of the character of the documents. She had assisted all of her children at different times and there was nothing unusual in her willingness to comply with the request of her son. It is unnecessary to characterize the quality of his act to procure evidence that her mind had failed.

There was some evidence of forgetfulness on Mrs. Brinton's part; at one time she forgot where she placed her pocketbook; another time she mislaid or thought she mislaid a letter (it was afterward developed that a grandson had removed it); and on some occasions while in Florida, very indefinitely stated, she was forgetful as to trifling matters. Mrs. Brinton was called as a witness in her own behalf and in twenty-five pages of testimony gave an account of her business transactions and her relations with her children. Her conduct on the stand as a witness led the learned trial judge to say in his opinion disposing of the case: "We do not now recall of any person near her age who showed more intelligence, more alertness and interest and whose testimony was more rational than that of the respondent." A careful reading of her testimony convinces us that it bears the impress of intelligence, alertness and capacity. All of the impeaching circumstances presented in the evidence in support of the complaint are explained in a reasonable manner, and the corroborating evidence of medical experts and others who have long known Mrs. Brinton and who certify to her intelligence and business ability make it satisfactorily clear that she is not a weak minded person within the meaning of the statute. That she has been confiding and generous in her relation with her children is apparent. If she has a fondness for some

of them greater than for the others because of their relations with her, such preference is natural and not indicative of impairment of mind. The Act of June 25, 1895, P. L. 300, and its supplement of June 19, 1901, P. L. 574, here sought to be applied, were not intended to authorize the transfer of the management of one's property to another merely because it could be shown that a more capable person than the owner could manage it with better financial results than does the latter. There are great inequalities in business cap'acity and a large liberty is accorded to every person in doing what he will with his own. A principal and natural right is involved in a proceeding to deprive one of the use and control of his property. Partiality of a parent for one or more of his children because of prejudices which do not seem to be well founded, is not a sufficient reason for calling into exercise the delicate power conferred on the court by those statutes. Preferences and prejudices are part of one's liberty; few people are without them and it is not the function of government to produce a deprivation of property merely because such infirmities of mind exist. The law invoked is only to be applied with great caution and where it clearly appears that the subject of the inquiry is unable to take care of his property and is liable to be subjected to loss by designing persons. The case falls short of exhibiting the clearness and strength which must be present when the extraordinary power is invoked with which the court is invested.

The decree is affirmed and the appeal dismissed at the cost of the appellant.