Nagy Appeal.

Argued March 26, 1951. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and GUNTHER, JJ.

`Daniel L. McCarthy`, with him *Calvin F. Smith*, for appellant.

*William C. Fulmer*, with him *Robert Ungerleider*, for appellee.

OPINION BY DITHRICH, J., July 19, 1951:

William Nagy, one of three sons of Barbara Nagy, a widow, filed a petition to have her adjudged so mentally defective that she is unable to take care of her property and to have a guardian appointed for her. The petition was brought under the Act of May 28, 1907, P. L. 292, as amended, 50 PS §941, et seq.

Respondent filed an answer denying the essential averments of the petition and demanded a trial by jury. The court then framed the following issue for submission to the jury: "Is Barbara Nagy so mentally defective that she is unable to take care of her property, and, in consequence thereof, is liable to dissipate or lose the same, and to become the victim of designing persons?" and ordered "that in such issue the petitioner be the plaintiff and the respondent be the defendant."

The real defendants, however, are Alexander and Kalman Nagy, the other sons of the respondent, who are fighting their brother, William Nagy, petitioner, for control of their mother's property. Their father died January 7, 1937. One of the sons, "Alex", never married and continued to reside with his mother after the death of his father. As stated by Chief Justice MAXEY in *Denner v. Beyer*, 352 Pa. 386, 388, 42 A. 2d 747: "The record gives the impression that the motive for the petition was not so much to conserve the respondent's property as to channel its inheritance to the next of kin."

"It must be borne in mind also, that the framing of the issue was only to fix the question to be tried, and who had the burden of proof and the duty of going forward with evidence. It did not convert the proceeding into an ordinary cause of action at law. The point to be decided was the mental condition of [Barbara Nagy] *at the time of trial,* with respect to [her] ability to take care of [her] property, and whether [she] is liable to dissipate or lose the same and become the victim of designing persons": *Ryman's Case,* 139 Pa. Superior Ct. 212, 216, 11 A. 2d 677. In the same case it was stated by President Judge KELLER (pp. 223, 224) : "The statute of 1907 is a dangerous one, to be administered with great caution, because it is capable of abuse and may be used by one's relatives to take the custody and control of his property improperly away from him: Hoffman's Est., 209 Pa. 357, 359, 58 A. 665; Bryden's Est., 211 Pa. 633, 636, 61 A. 250; In re Anna C. Brinton, 86 Pa. Superior Ct. 194, 198." Quoted with approval in *Denner v. Beyer,* supra, p. 396.

In *Denner v. Beyer,* supra, the Court also said (p. 397) : "It is a serious thing to deprive any person of the control of their own property or of their right to dispose of it by will. This right will be judicially taken away from a person only after preponderating proof of his lack of mental capacity to manage his own business affairs." See also *Owens Appeal,* 167 Pa. Superior Ct. 10, 74 A. 2d 705; *Wood Appeal,* 167 Pa. Superior Ct. 92, 74 A. 2d 538.

The jury found for the plaintiff and against the defendant. Since the case must be retried, we will not go into a detailed recital of the testimony at this time; suffice it that there was sufficient proof to support the finding of the jury and the decree of the court based thereon. The decree would be affirmed were it not that it must be reversed because of certain trial errors.

After the defense had rested without calling the defendant as a witness, plaintiff called her as for cross-examination. Objection to her being so called after the closing of plaintiff's case in chief was sustained. Plaintiff then called her as his own witness in rebuttal "for the purpose of rebutting the testimony for the Defendant as to the mental condition of Barbara Nagy, that she is of sound mind . . . , and to rebut the facts *in issue* brought out by the Defendant's witnesses as to her present mental capacity." (Emphasis added.) That likewise was objected to, but the objection was overruled. Nothing was said about rebutting any testimony as to the status of her property.

In the course of her direct examination as a rebuttal witness for plaintiff it developed that her testimony was somewhat in conflict with her testimony given at a previous hearing before the court without a jury. Counsel for plaintiff then started to cross-examine the witness and counsel for defendant said, "we object to this line of examination. The Court: I think that is sound. You are apparently endeavoring to cross examine her, Mr. Fulmer. Mr. Fulmer: Then I would like to plead surprise in view of this witness' statement that she has conveyed away all her property, and I ask leave to cross examine her, based on her testimony given to this Court on May 22, in which she stated that she owned property and which she now says she conveyed away in 1949." Leave to so cross-examine was granted over vigorous objection by counsel for defendant. She was then made to submit to a rigorous cross-examination which wound up with the witness being asked whether the two sons to whom she had deeded over most of her property had "ever give[n] you an accounting? Did they ever tell you how much money you had? A. I asked that time to time and that was satisfied. Q. They were satisfied? A. I was satisfied." But counsel persisted. "Q. Did they ever give you any papers,

anything in writing? A. No, I don't know. Mine God, I am too old now. Mine God, I am too old for all this thing." And on that note the testimony closed.

This Court held in *Ryman's Case,* supra (p. 218): "This was not an action at law between two litigants. It was a proceeding to determine whether the respondent was so mentally defective that he was incapable of taking care of his property, etc. One's mental capacity is best determined by his spoken words, his acts and conduct. They are always relevant evidence for that purpose." But the Court continued (p. 220): "It is a fact often lost sight of . . . that evidence relevant to an issue in the case and having probative value is usually admissible, and in order to be excluded, must be shown to come within a rule which makes it inadmissible. Professor Wigmore states it thus: *'All facts having rational probative value are admissible, unless some specific rule forbids* . . . . . . This principle, then, does not mean that anything that has probative value is admissible; this would be an entire misconception. . . .'"

In *Commonwealth v. Nowalk,* 160 Pa. Superior Ct. 88, 50 A. 2d 115, we said (p. 94): "While we are ever mindful of the rule that 'Whether such practice will be permitted is within the sound discretion of the court, and its action will not be reviewed by this court unless there is an abuse of that discretion': Com. v. Reeves, supra [267 Pa. 361, 110 A. 158], page 363, we are not unmindful of the earlier rule which has never been relaxed that 'The device of calling a witness whom the party is not compelled to call for the purpose of getting before the jury his contradictory statements made on other occasions cannot be allowed to succeed: Smith v. Price, 8 W. 447': Com. v. Wickett, 20 Pa. Superior Ct. 350, 355."

In the instant case the conclusion is compulsory that counsel resorted to the device solely for the purpose of getting before the jury defendant's contradic-

tory testimony given at a former hearing, since counsel for plaintiff was present at the former hearing and heard counsel for defendant state that she had transferred all her property to two of her sons, giving the volume and page of record.

The decree is reversed and a new trial granted.