# Wilson v. Manor Care of Lancaster

*William P. Murray, III*, for plaintiff.
*Jacquelin M. Carolan*, for defendants.

ASHWORTH, *J.*, April 4, 2014—This matter is before the court on moving defendants' preliminary objections seeking to compel arbitration of this medical professional liability action and, alternatively, to dismiss claims for punitive damages and negligence *per se*. For the reasons set forth below, these preliminary objections will be sustained in part and overruled in part.

## I. Background

Moving defendants are Manor Care of Lancaster, PA, LLC d/b/a Manorcare Health Services Lancaster, HCR Manor Care, Inc., HCR Healthcare, LLC, HCR Healthcare

II, LLC, HCR Healthcare III, LLC, HCR Healthcare IV, LLC, ManorCare Health Services, Inc., and Manor Care, Inc. (Manor Care defendants). Plaintiff alleges that these defendants owned, operated, licensed and/or managed Manor Care Health Services Lancaster (the Facility) and were engaged in the business of providing skilled nursing care and assisted living/personal care services to the general public. (*See* complaint at ¶ 20.)

Plaintiff Harl Gene Wilson was a resident at the Manor Care Facility from October 18, 2010, through October 30, 2010. (*See* complaint at ¶ 2.) Mr. Wilson was admitted for rehabilitation following a hospitalization for a lumbar laminectomy. His primary admitting diagnosis was degeneration of a disc. He also had urinary retention symptoms. (*Id.* at ¶ 101.) Mr. Wilson required assistance with care for all of his activities of daily living. (*Id.* at ¶ 34.)

According to Manor Care defendants, at the time of admission, Mr. Wilson "had just been through major surgery, he was in a lot of pain, he was taking powerful pain medications, and he needed someone to act on his behalf." (*See* supplemental memorandum of law of Manor Care defendants at 4.) So when asked by Manor Care to sign the necessary admissions papers on behalf of her father, Stephanie Calzada agreed. (*See* plaintiff's response to Manor Care defendants' supplemental memorandum of law, exhibit "A" (Calzada deposition) at 33.) Included in the series of documents presented to the patient's daughter for signature was an arbitration agreement. (*Id.* at 62-63.) This agreement provided that any disputes arising out of or in any way relating to the agreement or to plaintiff's stay at the facility, which could constitute a legally cognizable

cause of action in a court of law, "shall be submitted to binding arbitration." (*Id.*, exhibit "B" at ¶ B.) Despite signing the agreement as "Patient's legal representative," Plaintiff's daughter was not plaintiff's power of attorney. (*Id.* at 32-33, 59; *see also* plaintiff's supplemental memorandum, exhibit "E" (Kroeck Deposition) at 61, 69, 73, 83; Kroeck Deposition, exhibit "1" (financial information).) At the time of admission, plaintiff did not have a power of attorney in place. (*Id.*) Shawn Kroeck, the facility's admission coordinator, signed the Manor Care agreement as a representative of the facility. (*See* Calzada deposition, exhibit "B.")

Plaintiff Wilson commenced this action on May 21, 2012, alleging that Manor Care defendants' professional negligence and reckless conduct caused his severe injuries during his admission at the facility.[1] (*See* complaint at ¶ 142.) Those injuries included the worsening of a pressure ulcer on his coccyx, a urinary tract infection, poor hygiene, and severe pain. (*Id.* at ¶¶ 60, 114.) The negligent and reckless conduct by Manor Care defendants consisted of mismanagement, improper/ under-budgeting, under-staffing of the facility and lack of training or supervision of the facility employees, failure to provide adequate and appropriate health care, engaging in incomplete, inconsistent and fraudulent documentation, failure to develop an appropriate therapeutic care plan, failure to prevent infection, and failure to ensure the

---

1. Plaintiff has also sued Genesis Healthcare, LLC, 333 South West End Avenue Operations LLC, d/b/a Hamilton Arms Center, Genesis PA Holdings, LLC, Genesis Operations, LLC, and GHC Holdings, LLC, the corporate owners, operators and/or managers of the skilled nursing facility known as Hamilton Arms Center, where Mr. Wilson was a resident from November 15, 2010, through November 27, 2010. (*See* complaint at ¶¶ 3, 21-31.)

attainment of the highest level of physical, mental and psychological functioning. (*Id.* at 113.) Plaintiff further alleges negligence *per se* for violations of the neglect of a care-dependent person statute, 18 Pa. C.S.A. § 2713 (*Id.* at ¶¶ 150-57), and the older adults protective services act, 35 P.S. § 10225.101, et seq. (*Id.* at ¶¶ 158-65.)

Manor Care defendants filed preliminary objections to the complaint seeking to compel this matter to arbitration and, alternatively, to dismiss plaintiff's claims of negligence *per se* and punitive damages. Following discovery on the issue of authority to execute the arbitration agreement, the parties submitted supplemental briefs in support of their respective positions. This matter is now ripe for disposition.

## II. Discussion

### A. Motion to Enforce Arbitration Agreement

Manor Care defendants have initially raised a preliminary objection pursuant to Pa. R.C.P. 1028(a)(6) contending that, based on the arbitration agreement signed by plaintiff's daughter at the time of his admission, this court lacks subject matter jurisdiction and this case should be referred to arbitration. As a matter of public policy, our courts favor the settlement of disputes by arbitration to relieve the parties from expensive litigation and to ease the congestion of court calendars. *Pisano v. Extendicare Homes, Inc.*, 77 A.3d 651, 660 (Pa. Super. 2013). However,

[a]rbitration is a matter of contract, and parties to a contract cannot be compelled to arbitrate a given issue absent an agreement between them to arbitrate that issue. Even though it is now the policy of the law to favor settlement of disputes by arbitration and to

promote the swift and orderly disposition of claims, arbitration agreements are to be strictly construed and such agreements should not be extended by implication.

*Id.* at 661 (quoting *Elwyn v. DeLuca,* 48 A.3d 457, 461 (Pa. Super. 2012) (internal citation omitted)). Accordingly, arbitration between the parties in this case is required only if this court determines: (1) a valid agreement to arbitrate exists between the parties; and (2) the dispute involved is within the scope of the arbitration agreement. *Setlock v. Pinebrook Personal Care and Retirement Center,* 56 A.3d 904, 909 (Pa. Super. 2012). Thus, the threshold issue for this court is whether the parties have entered into a valid agreement to arbitrate.

Plaintiff argues that the arbitration agreement in this case is not valid because (1) plaintiff's daughter, Stephanie Calzada, did not have authority to sign the agreement on her father's behalf, (2) the agreement is unconscionable, and/or a contract of adhesion, and (3) the agreement is void as being against public policy, void for lack of consideration, void based on the fact that it was procured by fraud, void because it was signed under duress, void as defendants limit damages guaranteed to plaintiff by law, void as violating the Pennsylvania and United States Constitutions, and void as improperly limiting discovery that may be exchanged and the depositions that may be taken.

I initially consider plaintiff's contention that the agreement to arbitrate is a nullity because Ms. Calzada had no authority to execute the agreement on behalf of her father. As noted above, no party can be forced to arbitrate unless that party has entered into an agreement to do so. *Pisano,* 77 A.3d at 661. "However, a party can be

compelled to arbitrate under an agreement, even if he or she did not sign that agreement, if common-law principles of agency and contract support such an obligation on his or her part." *Array Healthcare Facilities Solutions Inc. v. Pesce*, 2 Pa. D.&C.5th 547, 556 (2006), aff'd by *Pesce v. Array Healthcare*, 931 A.2d 60 (Pa. Super. 2007) (internal quotation and citation omitted). For the arbitration agreement to bind Mr. Wilson in this case, there must have existed an agency relationship between him and his daughter.

The law is well settled that "[t]he relationship of agency cannot be inferred from mere relationship or family ties unattended by conditions, acts or conduct clearly implying an agency." *Walton v. Johnson*, 66 A.3d 782, 787 (Pa. Super. 2013) (quoting *Sidle v. Kaufman*, 345 Pa. 549, 29 A.2d 77, 81 (1942)). Rather, an agency relationship is created through actual authority, apparent authority or authority by estoppel. *Id.* at 786. The burden of establishing an agency relationship rests with the party asserting the relationship.[2] *Basile v. H&R Block, Inc.*,

2. Despite this well-established principle, Manor Care defendants contend that because "Mr. Wilson [failed] to present any testimony that his daughter did not have his permission to act on his behalf in signing the Manor Care admission paperwork," that "in and of itself, [is] determinative of the issue before the court" and *"[b]ased on this fact alone*, the court can reasonably infer and conclude that his daughter, Stephanie, did have authority to act on his behalf." (*See* Manor Care defendants' supplemental memorandum at 2 (emphasis added).) This argument is contrary to the law. It was not plaintiff's obligation to appear for a deposition or present testimony and "this fact alone" will not establish the intention of the parties. Moving defendants insist that "[a] negative inference can be drawn from the fact that Mr. Wilson has not presented any testimony at all. Clearly, if Ms. Calzada did not have his consent to sign the Manor Care paperwork for him, it is his burden to present that testimony. The defendants are entitled to a negative inference in this respect." (*Id.* at 8.) There was no evidence presented that plaintiff was not available or had refused to be deposed. Moreover, a negative inference is not positive evidence. *Yi v. State Board of Veterinary*

563 Pa. 359, 367-68, 761 A.2d 1115, 1120 (2000) (citing *Scott v. Purcell*, 490 Pa. 109, 117 n.8, 415 A.2d 56, 60 n.8 (1980)). This burden is a "fair preponderance of the evidence." *Volunteer Fire Co. of New Buffalo v. Hilltop Oil Co.*, 412 Pa. Super. 140, 146, 602 A.2d 1348, 1351 (1992).

Here, Manor Care defendants have failed to establish that Ms. Calzada had actual authority to sign the Manor Care Health Services arbitration agreement. Actual authority exists where the principal deliberately and specifically grants authority to the agent as to certain matters. *Walton*, 66 A.3d at 786. It is undisputed that Ms. Calzada was not her father's legal guardian nor did she have a power of attorney or any other writing authorizing her to take any action on behalf of her father at the time of his admission to the facility. (*See* Calzada deposition at 32-33, 59; *see also* Kroeck deposition at 61, 69, 73, 83; Kroeck deposition, exhibit "1.")

In fact, it was not clear to Ms. Calzada why she, and not her father, was presented with the admissions paperwork two days after Mr. Wilson's admission to the facility and asked to sign on her father's behalf, other than Manor Care told her she was listed as her father's "emergency contact." (Calzada deposition at 33; Kroeck deposition, exhibit "1" (Admitting record).) According to Manor Care defendants, at the time of admission, Mr. Wilson "needed someone to act on his behalf." (*See* Manor Care defendants' supplemental memorandum at 4.) Specifically, on admission, Mr. Wilson "presented with pain he rated at '8 out [of] 10'." (*Id.* at 2.) The nurses' progress notes for the first three days at the Facility

---

*Medicine*, 960 A.2d 864, 875 (Pa. Cmwlth. 2008).

"describe the pain he was complaining of in his back, hip and legs, and the pain medications being prescribed, and adjusted, to address his pain." (*Id.*, Exhibit "C.") Because of his pain, Mr. Wilson received "multiple administrations of Vicodin and Lyrica ... those first days of his Manor Care admission." (*Id.*, Exhibit "D.") Based upon the totality of this evidence, Manor Care defendants assert that "[i]t can reasonably be inferred that Mr. Wilson did not sign the admission paperwork himself based on his post-operative use of these narcotic pain medications" and this is why Ms. Calzada "took over this role."[3] (*See* Manor Care defendants' supplemental memorandum at 2, 4.)

If the court infers, as suggested by defendants, that plaintiff lacked the mental capacity to review and understand the admissions paperwork due to his medications, then Mr. Wilson similarly lacked the ability to appoint an agent to sign that paperwork for him. A person without the mental capacity to manage his own affairs "lacks the ability to appoint agents to do it for [him]." *In re Dean*, 167 Pa. Super. 92, 100, 74 A.2d 538, 541 (1950). Mr. Wilson, who "needed someone to act on his behalf" due to his diminished capacity as a result of the strong narcotic medications, simply could not delegate to his daughter the authority to sign the admissions paperwork which included the arbitration agreement. *See Walton*, 66 A.3d at 786 (in finding mother lacked authority to sign arbitration agreement for daughter who was in a coma at time of admission, court noted that comatose patient "could not authorize her own treatment nor could she

---

3. Defendants concede that their admissions coordinator, Shawn Kroeck, has no recollection of Mr. Wilson's admission and, thus, can offer no specific testimony on this issue or any other. (*See* Manor Care defendants' supplemental memorandum at 4; *see also* Kroeck Deposition at 61-84, 88.)

grant authority to anyone else.").

Moreover, there is no evidence that at any time during his admission to the facility Mr. Wilson advised his daughter that he wanted her to sign the arbitration agreement on his behalf. (*See* Calzada deposition at 85-86.) Ms. Calzada neither told her father she had been asked to sign any admissions paperwork (including the arbitration agreement), nor that she would sign it. (*Id.* at 86.) Without the mental capacity to review and understand the admissions paperwork due to his medications, Mr. Wilson similarly lacked the ability to appoint an agent to sign that paperwork for him.

Defendants have further failed to establish that Ms. Calzada had apparent authority to waive Mr. Wilson's constitutional right to litigate his claims in court. Apparent authority exists where a principal, by words or conduct, leads people with whom the alleged agent deals to believe the principal has granted the agent the authority he or she purports to exercise. *Walton*, 66 A.3d at 786. *See also Triage v. Prime Insurance Syndicate, Inc.*, 887 A.2d 303, 307 (Pa. Super. 2005). Also, an agent cannot, simply by her own words, invest herself with apparent authority. Such authority emanates from the principal's action and not the agent's. *Walton*, 66 A.3d at 787 (citing *Turnway Corporation v. Soffer*, 461 Pa. 447, 458, 336 A.2d 871, 876 (1975)).

There is no evidence presented of any manifestation by Mr. Wilson to the facility that his daughter was authorized to act on his behalf. Indeed, defendants' argument focuses on the actions of the daughter, the purported agent, in attempting to establish apparent authority. Manor Care defendants' contention that Ms. Calzada "held herself

out as her father's agent," by signing on the arbitration agreement line labeled "Legal Representative," is meritless. (*See* Manor Care defendants' supplemental memorandum at 9.) Again, authority emanates from the principal's action and not the agent's.

Manor Care defendants spend the majority of their supplemental memorandum of law explaining their subjective interpretation of the deposition testimony of Linda Sullivan, the Nursing Home Administrator for the Genesis defendants. (*See* Manor Care defendants' supplemental memorandum at 3, 5, 6, 8, 9.) They contend that admissions conversations with Mr. Wilson and his daughter, as detailed by Ms. Sullivan one month after the Manor Care admission, establish an agency relationship in Ms. Calzada at the time she signed the arbitration agreement at the Manor Care Facility one month earlier. (*Id.* at 6.) Occurrences at the Genesis defendants' facility *after* the relevant admission at Manor Care have absolutely no bearing on the validity of the arbitration agreement signed at the Manor Care facility, nor does it have any bearing on Ms. Calzada's legal authority at that point in time.

The documents at issue with the Genesis defendants were signed on November 15, 2010. The documents at issue here were signed on October 20, 2010. Manor Care defendants cannot argue that the events surrounding Mr. Wilson's admission to the Genesis defendants' facility establish that an agency relationship existed a month prior at a separate facility.

This testimony by Ms. Sullivan simply does not support a finding that Mr. Wilson authorized his daughter to sign a writing on his behalf at Manor Care that forfeited his right

to a jury trial. Moreover, there is no other evidence in the record that would support a finding of apparent authority.

Here, the alleged principal, Mr. Wilson, was not present during the admission process and it is now Manor Care defendants' position that Mr. Wilson "needed someone to act on his behalf" at that time. (*See* Manor Care defendants' supplemental memorandum at 4.) Consequently, the alleged principal did not, by word or conduct, lead the facility to believe that he had granted his daughter the authority to sign any papers on his behalf.[4]

---

4. This case is consistent with other decisions in this Commonwealth involving the issue of a child's apparent authority to sign an arbitration agreement as part of the nursing home admission process for a parent. *See Walton, supra* (finding arbitration agreement invalid where mother lacked authority to sign arbitration agreement for daughter who was in a coma at time of admission); *Wert v. Manorcare of Carlisle PA, LLC*, 61 Cumb. 381 (2012) (finding arbitration agreement invalid because decedent was capable of signing admission paperwork herself and defendant failed to show daughter had any authority to bind decedent to arbitration); *Sullenberger v. HCF, Inc.*, 89 W.L.J. 169 (2007) (finding arbitration agreement invalid where son did not possess power of attorney to act as the legal agent of his mother and defendant failed to show son had any authority to bind mother to arbitration); *Duprey v. ManorCare Health Services — Carlisle*, No. 12-1419, slip op. (C.P. Cumberland Co. Sept. 13, 2012) (finding arbitration agreement invalid where resident's daughter had neither actual authority, due to lack of power of attorney, nor apparent authority, due to failure to present evidence that resident held out her daughter as authorized to act on her behalf). *See also, Joe v. Mercy Fitzgerald Hospital*, 26 Pa. D.&C.5th 164 (Phila. 2012) (overruling preliminary objection seeking to compel arbitration because defendant did not provide sufficient evidence that patient's husband had authority to sign arbitration agreement for patient); *Carr v. Immaculate Mary Nursing Home*, 15 Pa. D.&C.5th 415 (Phila. 2010) (overruling preliminary objection seeking to compel arbitration because defendant did not provide sufficient evidence that patient's wife had authority to sign arbitration agreement for patient); *Hickman v. Woodhaven*, 156 P.L.J. 257 (2008) (overruling preliminary objection seeking to compel arbitration, finding the agreement invalid because husband did not have power of attorney over his wife, and defendants failed to establish any agency relationship between them); *Ronan v. Manorcare of Carlisle, PA, LLC*, No. 11-7482, slip op. (C.P. Cumberland Aug. 27, 2012) (same); *Kazimer v. Manor Care of Carlisle PA LLC*, No. 10-3391, slip op. (C.P. Cumberland Aug. 2010) (same).

Manor Care defendants concede that their admissions coordinator, Shawn Kroeck, has no recollection of Mr. Wilson's admission and, thus, can offer no testimony of any alleged agency relationship created between Mr. Wilson and Ms. Calzada upon which Mr. Kroeck relied when presenting the admissions paperwork and the arbitration agreement at issue. (*See* Manor Care defendants' supplemental memorandum at 4; Kroeck deposition at 61-84, 88.)

Lastly, agency by estoppel occurs when the principal fails to take reasonable steps to disavow the third party of their belief that the purported agent was authorized to act on behalf of the principal. *Walton*, 66 A.3d at 786. It is "essentially a determination of agency by after-the-fact actions by the principal." *Id.* at 788.

> Therefore, to prevail on a claim of agency by estoppel on the issue of authority to sign the ADR agreement, [defendant hospital] must prove by a fair preponderance of the evidence that either: (1) there was some carelessness or negligence on the part of [the principal patient] that allowed [defendant hospital] to rely on the waiver or (2) she did not take reasonable steps, knowing that [defendant hospital] was relying on the waiver, to correct their belief.

*Id.* at 788-89 (footnote omitted).

There is no authority by estoppel because Manor Care defendants offered no evidence Mr. Wilson was negligent in failing to take reasonable steps to disavow the Facility of its belief that Ms. Calzada was authorized to act on his behalf. Manor Care defendants offered no evidence showing Mr. Wilson knew of the arbitration clause,

authorized his daughter to sign the agreement, or otherwise agreed to arbitrate any disputes with the Facility.[5]

Manor Care defendants acknowledge that the facility specifically knew of Mr. Wilson's diminished mental capacity at the time of his admission and for several days thereafter due to the consumption of narcotic pain medications. (*See* Manor Care defendants' supplemental memorandum at 2.) In fact, Mr. Wilson was not even present during the admission process (*see* Calzada deposition at 60); thus, Manor Care defendants offered no evidence whatsoever of Mr. Wilson's conduct when the agreement was executed. Nor did Manor Care defendants offer any evidence of Mr. Wilson's conduct at the facility after the agreement was signed by his daughter. The facility neither presented the arbitration agreement to Mr. Wilson at a later time for his ratification nor did it provide him with a copy of the agreement signed by his daughter.

Therefore, Manor Care defendants presented no evidence that Mr. Wilson knew or should have known about the waiver after-the-fact or that his daughter might have exceeded her authority in signing the agreement. Manor Care defendants presented nothing to suggest that a waiver of a jury trial was something that a patient should anticipate upon admission to the facility. Manor Care defendants have not shown what reasonable steps Mr. Wilson should have taken, but did not, in order to avoid a finding of agency by estoppel. Because there is no showing Mr. Wilson knew or should have known about

---

5. Defendants' argument that plaintiff should be estopped from denying that his daughter did not have authority to sign the Manor Care arbitration agreement based upon Mr. Wilson's alleged statement, *one month later*, to Ms. Sullivan at the Hamilton Arms Center that his "daughter takes care of everything for [him]," must be rejected as extraneous and irrelevant and immaterial.

the arbitration agreement, he cannot have been negligent either for failing to repudiate his daughter's actions or for failing to take reasonable steps to notify the Facility that reliance on the agreement was improper. Therefore, Manor Care defendants cannot prevail on an assertion of agency by estoppel.

Based upon the facts of this case, I find that Ms. Calzada had no authority to execute the arbitration agreement on behalf of her father; therefore, no valid agreement to arbitrate exists between the parties. Because of this finding, I do not consider the other reasons plaintiff offered for denying Manor Care defendants' motion to compel arbitration.

B. The Remaining Non-Arbitration Preliminary Objections

1. Negligence *Per Se*

Manor Care defendants contend that plaintiff's claims of negligence *per se* arising from violations of the neglect of care-dependent person statute, 18 Pa. C.S.A. § 2713, and the older adults protective services act, 35 P.S. § 10225.101 et seq., are legally insufficient and, therefore, should be stricken. The court disagrees. For a full discussion and analysis of this issue, *see Bernhardt v. ManorCare, et al.*, No. CI-12-10666, slip op. (C.P. Lancaster, February 24, 2014), and *Jones v. GGNSC, et al.*, No. CI-12-12987, slip op. (C.P. Lancaster, January 24, 2014).

The clearly stated purpose of both statutes is to protect older or care-dependent Pennsylvanians from abuse and neglect by caretakers, including long term care nursing facilities. *See* 18 Pa. C.S.A. § 2713(a)(1); 35 P.S. § 10225.102. In the instant matter, with respect to the claim

of negligence *per se* based on the dependent person statute, Mr. Wilson was clearly a member of a class of nursing home residents that the statute was designed to protect and defendants were Mr. Wilson's "caretakers" as defined by 18 Pa. C.S.A. § 2713. Plaintiff's averments, if proven, certainly could establish that defendants' alleged reckless failure to provide basic care caused Mr. Wilson avoidable injuries and suffering. Thus, plaintiff's allegations clearly support a claim that defendants' conduct falls within the type of harm that the statute seeks to prevent and furthers the statute's purpose of protecting a target group of individuals classified as care-dependent persons.

Similarly, Mr. Wilson, as a nursing home resident, comes within the older person's protections intended by the protective services act. *See* 35 P.S. § 10225.103. Moreover, the statute is directed, at least in part, to obviate the specific kinds of harm which were alleged to have been sustained: the worsening of pressure ulcers, a urinary tract infection, poor hygiene, and severe pain. (*See* complaint at ¶¶ 60, 114.) As plaintiff alleges that defendants' failures to provide basic care caused Mr. Wilson avoidable pain and suffering, the law supports plaintiff's claim for negligence *per se* arising from defendants' alleged protective services act violations.

It should be noted that plaintiff has asserted these negligence *per se* claims in separate counts of the complaint. Under Pennsylvania law, however, negligence *per se* "does not create an independent basis of tort liability but rather establishes, by reference to a statutory scheme, the standard of care appropriate to the underlying tort." *Cabiroy v. Scipione*, 767 A.2d 1078, 1082 (Pa. Super. 2001) (quoting *In re Orthopedic Bone Screw Prod. Liab. Litig.*, 193 F.3d 781, 790 (3d Cir. 1999)). Since the

violation of a statute in and of itself cannot serve as an independent basis of liability, counts two and three of the complaint should be dismissed. Plaintiff, however, will be granted leave to amend his complaint to incorporate the negligence *per se* claims pursuant to the dependent person statute and protective services act as additional bases for the negligence claim set forth in count one of the complaint.

2. Punitive Damages

Manor Care defendants' last preliminary objection is a demurrer to plaintiffs' claim for punitive damages. This objection must be overruled. For a full discussion and analysis of this issue, *see Bernhardt v. ManorCare, supra,* and *Jones v. GGNSC, supra.*

Here, plaintiff alleges that Manor Care defendants, motivated by a desire to increase profits, knowingly reduced expenditures for needed staffing, training, supervision, and care to levels that it knew created recklessly high resident-to-nurse ratios that inevitably would lead to numerous infections and other injuries, such as those suffered by Mr. Wilson. (*See* complaint at ¶¶ 48-60.) Plaintiff has averred facts that establish defendants knew, or should have known, their understaffing created a high degree of risk of physical harm to its patients and deliberately proceeded to understaff its facility in conscious disregard to that risk in order to maximize its profits. (*Id.*) This court cannot say with certainty that upon these facts averred, the law will not permit plaintiff to recover punitive damages.

After discovery is completed in this case, if, as claimed by defendants, plaintiff is unable to prove any facts to support the claim for punitive damages, then this court will entertain a motion for summary judgment. Until then,

this court is loath to decide the viability of plaintiff's punitive damages claim as it cannot say that no reasonable inference from the facts alleged supports a punitive award. Therefore, Manor Care defendants' demurrer to plaintiff's claim for punitive damages will be overruled and dismissed at this time, without prejudice.

## III. Conclusion

For the reasons set forth above, Manor Care defendants' preliminary objections to plaintiff's complaint will be sustained in part and overruled in part.

Accordingly, I enter the following:

## ORDER

And now, this 4th day of April, 2014, upon consideration of the preliminary objections of defendants, plaintiff's response thereto, and the briefs filed by the parties, it is hereby ordered as follows:

1. Defendants' preliminary objection in the nature of a motion to compel arbitration is overruled and dismissed;

2. Defendants' preliminary objection in the nature of a demurrer to count two is sustained and count two is dismissed;

3. Defendants' preliminary objection in the nature of a demurrer to count three is sustained and count three is dismissed; and

4. Defendants' preliminary objection in the nature of a demurrer to plaintiff's claim for punitive damages is overruled and dismissed, without prejudice.

It is further ordered that plaintiff shall have 30 days from the date of this order to file an amended complaint

to incorporate the negligence *per se* claims pursuant to the neglect of care-dependent person statute, 18 Pa. C.S.A. § 2713, and the older adults protective services act, 35 P.S. § 10225.101 et seq., as additional bases for the negligence claim set forth in count one of the complaint.