## Chighizola v. Beverly Enterprises Inc.

C.P. of Monroe County, no. 6672 Civil 2005.

*Brian L. Strauss,* for plaintiff Chighizola.
*Marc A. Moyer,* for defendant.

WALLACH MILLER, *J.,* March 13, 2006—This negligence action arises out of events that occurred between

October 28, 2003 and November 4, 2003, when plaintiff decedent resided at defendant Beverly Enterprises—Pennsylvania Inc. d/b/a Beverly Healthcare—Stroud (facility). On October 28, 2003, decedent Mary Rosalie Jones was admitted under the defendant's care at Beverly Health Care—Stroud. In admitting plaintiff into the defendant's care, plaintiff's daughter, Candace MacIntire, signed her name in the place reserved for an "authorized agent" on the admission forms. In the same time span, Ms. MacIntire also signed, as an "authorized agent" of the plaintiff, a "Resident Trust Fund Authorization" and a "Resident and Facility Arbitration Agreement."

Pursuant to the terms of the arbitration agreement, plaintiff's daughter agreed on behalf of the plaintiff decedent that all claims and disputes arising or in connection with the arbitration agreement or health care services would be resolved exclusively by an arbitration conducted at a place agreed upon by both parties in accordance with the National Arbitration Forum Code of Procedure and not by lawsuit or resorting to the court process. The arbitration agreement further provides:

"The resident understands that (1) he/she has the right to seek legal counsel concerning this arbitration agreement, (2) that execution of the arbitration agreement is not a precondition to admission or to the furnishing of services to the resident by the facility, and (3) this arbitration agreement may be rescinded by written notice to the facility from the resident within 30 days."

Procedurally, on August 19, 2005, plaintiff filed a complaint against defendant as a result of an incident which occurred on November 4, 2003, while in the care of the defendant. On October 12, 2005, defendant filed pre-

liminary objections, which did not include an averment that this matter was subject to an arbitration agreement. After a stipulation between the parties to drop claims against certain individuals employed by the defendant, plaintiff filed an amended complaint on October 29, 2005. Defendant filed preliminary objections to plaintiff's amended complaint on November 18, 2005, but again, defendant did not include any averments that this matter was subject to an arbitration agreement. However, on November 23, 2005, defendant filed a motion to compel arbitration, which plaintiff opposed, and this court heard oral arguments from both sides on February 6, 2006. Presently, no discovery has been exchanged between the parties, nor has this court ruled on any pretrial motions by either side.

In opposing defendant's motion to compel arbitration, plaintiff raises the following arguments: (1) the arbitration agreement is not valid because decedent plaintiff's daughter, Candace MacIntire, had no authority to bind her mother to the arbitration agreement, (2) the arbitration agreement is not valid because the defendant fails to establish a knowing and voluntary waiver by the decedent plaintiff of a right to a jury trial, (3) the arbitration agreement is not valid because the defendant breached their fiduciary duty to the decedent plaintiff, (4) the Federal Arbitration Act does not apply if the arbitration agreement is invalid, and (5) the defendant waived their right to arbitration by not raising the arbitration agreement as a preliminary objection.

Under Pennsylvania law, where a party to a civil action seeks to compel arbitration, judicial inquiry is limited to determining first whether a valid agreement to

arbitrate exists between the parties, and if so, whether the dispute involved is within the scope of the arbitration provision. *Warwick Township Water and Sewer Authority v. Boucher & James Inc.,* 851 A.2d 953 (Pa. Super. 2004); *Midomo Company Inc. v. Presbyterian Housing Development Co.,* 739 A.2d. 180 (Pa. Super. 1999). Arbitration is a favored policy for the resolution of disputes because it serves to promote the swift and orderly disposition of claims. *Midomo,* 739 A.2d at 190. Therefore, if the parties agree to arbitration in a clear and unmistakable manner, every reasonable effort should be made to favor the enforcements of such agreements. *Williams v. Gruntal & Company,* 447 Pa. Super. 357, 669 A.2d 387 (1995). In the present case, plaintiff does not challenge whether the dispute involved here is within the scope of the arbitration agreement, but only the validity of the agreement.

In its first argument opposing the validity, plaintiff relies on principal-agent theory that decedent's daughter, Candace MacIntire, had no authority to act on behalf of decedent (the principal) regarding the arbitration agreement. At oral argument on February 6, 2006, plaintiff argued that, while Ms. MacIntire can act as an agent in signing medical admissions forms, the arbitration agreement was beyond Ms. MacIntire's scope of authority because of the legally binding nature of the agreement.

In Pennsylvania, there are three basic elements necessary to establish a principal-agent relationship: (1) manifestation by a principal that an agent shall act for the principal, (2) the agent's acceptance of the undertaking, and (3) the parties' understanding that the principal is to be in control of the undertaking. *Basile v. H & R Block*

*Inc.,* 563 Pa. 359, 368, 761 A.2d 1115, 1120 (2000); *Scott v. Purcell,* 490 Pa. 109, 117, 415 A.2d 56, 60 (1980). The burden of establishing an agency relationship rests with the party asserting the relationship. *Id.* An agent cannot, simply by its own words, invest himself with apparent authority; such authority emanates from the action of the principal and not the agent. *Turnway Corporation v. Soffer,* 461 Pa. 447, 458, 336 A.2d 871, 876 (1975); *Jennings v. Pittsburgh Mercantile Company,* 414 Pa. 641, 645, 202 A.2d 51, 54 (1964).

While plaintiff presents a novel argument that an agent's authority to sign medical admissions forms differs from the authority to sign an arbitration agreement, we cannot agree. Pennsylvania has long held that the liability of a principal to a third party for an agent's acts may stem from express, implied, or apparent authority. *Reifsnyder v. Dougherty,* 301 Pa. 328, 333, 152 A. 98, 100 (1930). The liability of the principal is not limited to such acts of the agent as are expressly authorized or necessarily implied from express authority, but all such acts of the agent as are within the apparent scope of the authority conferred on him are also binding upon the principal. *Downey & Co. Inc. v. Kraemer Hosiery Co.,* 136 Pa. Super. 553, 7 A.2d 492 (1939). Where the principal, by words or conduct, holds one out as an agent, there is apparent authority. *Reifsnyder,* 301 Pa. at 333, 152 A. at 100. In order for a reasonable inference of the existence of apparent authority to be drawn from prior dealings, these dealings must have a measure of similarity to the act for which the principal is sought to be bound and a degree of repetitiveness. *Turnway,* 461 Pa. at 459, 336 A.2d at 877. A principal who clothes his agent with such

apparent authority is estopped from denying such authority. *Id.* at 457, 336 A.2d at 876.

In the present matter, decedent plaintiff held Candace MacIntire out as having the authority to sign decedent's admission forms as well as the Resident Trust Fund Authorization. In both documents, Ms. MacIntire signed as decedent's agent, and plaintiff does not contest Ms. MacIntire's authority to do so. One can reasonably infer that the decedent appears to have given her agent the apparent authority to sign the arbitration because of the similarities of how and when the documents were signed. See *Turnway,* 461 Pa. at 459, 336 A.2d at 877. In the arbitration agreement, Ms. MacIntire again signed as decedent's agent, and the arbitration agreement was signed in the same time span and context as the other documents. Moreover, plaintiff's counsel stated at oral argument that the decedent was of sound mind and conscience on October 28, 2003. Therefore, there is no reason why the decedent could not have rescinded the arbitration agreement, as permitted under the terms of the arbitration agreement, if the decedent believed that Ms. MacIntire had overstepped her authority as an agent. Allowing the plaintiff in hindsight to now narrowly pick which documents the agent did not have authority to authorize would unjustly benefit the plaintiff for litigation purposes. Therefore, mindful of the circumstances in which the arbitration agreement was authorized, we find that Ms. MacIntire had the proper authority to bind the decedent to the arbitration agreement.

Examining plaintiff's next argument that Ms. MacIntire did not knowingly and voluntarily waive her right to a jury trial, we disagree with the plaintiff due to the

conspicuous nature and clarity of the arbitration agreement that plaintiff's agent signed. At the top of the arbitration agreement, it clearly states in bold letters "RESIDENT AND FACILITY ARBITRATION AGREEMENT (NOT A CONDITION OF ADMISSION-READ CAREFULLY)." The document contents are clearly unambiguous from the title, and Ms. MacIntire's signature appears at the end of the document. On the second page of the document, it reads in bold letters "THE PARTIES UNDERSTAND AND AGREE THAT THIS CONTRACT CONTAINS A BINDING ARBITRATION PROVISION WHICH MAY BE ENFORCED BY THE PARTIES." The document also clearly informs Ms. MacIntire that she has the right to seek legal counsel and can rescind the agreement in 30 days if she chooses. Even if plaintiff did not properly read the agreement, "in the absence of fraud, the failure to read a contract before signing it is an unavailing excuse or defense and cannot justify an avoidance, modification or nullification of the contract; it is considered supine negligence." *Germantown Savings Bank v. Talacki,* 441 Pa. Super. 513, 521, 657 A.2d 1285, 1289 (1995). As a result, we find plaintiff's argument lacks merit and is denied.

Finally, in plaintiff's last argument challenging the validity of the arbitration agreement, plaintiff states that defendant breached its fiduciary duty to the plaintiff by taking advantage of the decedent and her family by enticing Ms. MacIntire into signing the arbitration agreement. Plaintiff insists at length that defendant had a fiduciary duty with Ms. MacIntire, decedent's agent, at the time of the arbitration agreement's signing; therefore, defendant had an affirmative duty to disclose all

terms of the agreement and their substantive effect. However, assuming defendant actually owed such a duty arguendo, the arbitration agreement uses conspicuous and clear language highlighting the arbitration agreement and its effect. The terms of the arbitration are listed as well as the binding effect that the arbitration agreement has. Ms. MacIntire's failure to read those terms is not a defense. *Talacki* at 521, 657 A.2d at 1289. Plaintiff's argument again fails to challenge the validity of the arbitration agreement.

Plaintiff's next argument, which states that the Federal Arbitration Act does not apply if the arbitration agreement is found invalid, is now inapplicable since we have found the agreement valid notwithstanding plaintiff's challenges.

Lastly, plaintiff argues that defendant waived their right to arbitration by filing preliminary objections without including averments that this case was subject to an arbitration agreement. For support, plaintiff cites *Wilk v. Ravin*, 46 D.&C.4th 347 (2000) an Allegheny Common Pleas Court decision holding that a party waives an arbitration agreement if the agreement is not asserted prior to the filing of an answer to the complaint. In that case, the court ruled that because of the 1991 Amendment of Pa.R.C.P. 1028(6) making alternative dispute resolution a ground for which preliminary objections may be filed, an agreement to arbitrate may be waived if not raised as a result of Pa.R.C.P 1032(a). *Id.* at 350. The court held that a preliminary objection based on an arbitration agreement is analogous to one based on lack of jurisdiction because both grounds involve objections to the consideration of the merits of the complaint by the court in

which the lawsuit was filed. *Id.* at 352. Therefore, because a preliminary objection based on lack of jurisdiction can be waived under Pa.R.C.P 1032(a), an objection based on an arbitration agreement should also be waived.

Although the *Ravin* case could pose as persuasive but not binding authority for this court, successive Pennsylvania Superior Court cases have diminished *Ravin*'s impact. In *Keystone Technology Group Inc. v. Kerr Group Inc.,* 824 A.2d 1223 (Pa. Super. 2003), the Pennsylvania Superior Court held that even though the appellant had already filed a complaint and amended complaint before filing a motion to compel arbitration, the appellant did not waive its right to arbitration because there was no resulting prejudice to the appellee. The court stated: "a waiver of a right to proceed to arbitration pursuant to the term of a contract providing for binding arbitration should not be lightly inferred and unless one's conduct has gained him an undue advantage or resulted in prejudice to another he should not be held to have relinquished the right." *Id.* at 1226.

The *Keystone* court placed particular emphasis on the fact that no discovery had taken place before the filing of a motion to compel arbitration; therefore, no side had gained an advantage from the discovery process. See *id.* at 1227. As a result, the mere filing of a complaint or answer without resulting prejudice to either side will not justify a waiver of the right of arbitration. *Id.* at 1226.

In *Thermal C/M Services Inc. v. Penn Maid Dairy Products,* 831 A.2d 1189, 1191 (Pa. Super. 2003), our Superior Court followed the *Keystone* rationale in holding that a party does not waive its right to arbitration

when there is no undue advantage gained or imposed prejudice upon the other party. Thermal Services initially raised the arbitration agreement as a preliminary objection, but later intentionally abandoned this argument in its accompanying supporting brief and proposed draft order, which the trial court adopted without reference to the arbitration agreement. *Id.* at 1191. However, Thermal brought a motion to compel arbitration two months later to the trial court. *Id.* The Superior Court ruled that Thermal did not waive its right to compel arbitration even though it initially abandoned its arbitration argument because Thermal had not gained an unfair advantage, nor had the other party been prejudiced. *Id.* at 1191 n.2.

In the present case, we find the circumstances very similar to *Keystone* and *Thermal.* Here, no discovery has taken place. While plaintiff made a request for answers to its interrogatories, there have been no answers, nor have any depositions taken place. Neither side has gone through the discovery process except for plaintiff's request for interrogatory answers, nor has pretrial progressed to a point where it would be inefficient to grant defendant's motion to compel. Because nothing has taken place such as pretrial motions or even setting up a discovery time period, there is no discernible advantage gained by defendant or prejudice that will befall the plaintiff. Therefore, we cannot lightly infer a waiver of the arbitration agreement. *Keystone,* 824 A.2d at 1226. Pennsylvania courts long have held arbitration as a favored policy for resolutions of disputes because it serves to promote the swift and orderly disposition of claims. *Midorno,* 739 A.2d at 190. In this light, we find that defendant has not waived his right to arbitration.

Summarily, we find the arbitration agreement between defendant and plaintiff valid and has not been waived by defendant. Therefore, defendant's motion to compel arbitration is granted.

## ORDER

And now, March 13, 2006, defendant's motion to compel arbitration is granted.