**Lakeysha WALTON, Appellee**

v.

**Robert Wood JOHNSON, University Hospital Hamilton, and Kindred Hospital Philadelphia, and Kindred Hospital East, LLC, and Kindred Healthcare, Inc.**

**Appeal of Kindred Hospital–Philadelphia, Kindred Hospital East, LLC and Kindred Healthcare, Inc., Appellant.**

Superior Court of Pennsylvania.

Argued Jan. 9, 2013.
Filed May 7, 2013.

William J. Mundy, and John M. Skrocki, West Conshohocken, for appellant.

Christopher J. Culleton and Joseph P. Guzzardo, Newton, for appellee.

BEFORE: LAZARUS, J., OTT, J., and STRASSBURGER, J.*

OPINION BY OTT, J.

Kindred Hospital—Philadelphia, Kindred Hospital East, LLC and Kindred Healthcare, Inc. (collectively "Kindred") appeal from the order entered May 11, 2012 in the Court of Common Pleas of Philadelphia County overruling its preliminary objections, which sought to enforce an arbitration agreement between it and Lakeysha Walton. Kindred claims the trial court erred in failing to find Lakeysha Walton's mother was acting as an agent for her when she signed the arbitration agreement. The agreement was part of a series of documents presented to Walton's Mother, Nancy, regarding admission to the Kindred facility. After a thorough review of the submissions by the parties, relevant law, and certified record, we affirm and remand this matter for further proceedings.

We adopt and relate the factual background of this matter as stated by the trial court in its Pa.R.A.P. 1925(a) Opinion.

* Retired Senior Judge assigned to the Superior Court.

Lakeysha Walton (hereinafter "Plaintiff") and her mother, Nancy Walton, reside together in Trenton, New Jersey. [Kindred Hospital] Philadelphia [sic] is organized under the laws of the Commonwealth of Pennsylvania and is located in Philadelphia, PA. Defendant Kindred Hospital East, LLC is organized under the laws of the Commonwealth of Pennsylvania with its principal place of business in Philadelphia, PA. Defendant Kindred Healthcare, Inc. is a Delaware corporation with its principal place of business in Louisville, KY. Defendants Kindred Hospital Philadelphia, Kindred Hospital East, LLC and Kindred Healthcare, Inc. are collectively referred to herein as "Kindred Defendants."

On January 13, 2010, Plaintiff underwent a gastric bypass procedure at Robert Wood Johnson. Following her discharge on January 18, 2010, Plaintiff began to experience abdominal pain and vomiting. Plaintiff returned to the Robert Wood Johnson Emergency Room on January 12, 2010 and was diagnosed with a bowel obstruction and gastric perforation. Plaintiff remained at Robert Wood Johnson from January 20, 2010 to February 12, 2010. During that time, Plaintiff experienced loss of consciousness, renal failure and infection. As a result, Plaintiff was intubated and became ventilator dependent. During her time at Robert Wood Johnson, Plaintiff developed bedsores on her sacrum and buttocks.

On February 12, 2010, Plaintiff was transferred to Kindred Hospital Philadelphia, where she remained until April 20, 2010. Plaintiff was thirty-six (36) years old at the time. Plaintiff was in a coma at the time of her admission to Kindred Hospital Philadelphia. During Plaintiff's time at Kindred Hospital Philadelphia, her bedsores worsened. Plaintiff contends that the bedsores worsened because of the harm that was caused at Robert Wood Johnson, and because of the negligent care provided at Kindred Hospital Philadelphia.

On March 1, 2010 halfway through Plaintiff's stay at Kindred Hospital Philadelphia, Plaintiff's mother, Nancy Walton, signed a Voluntary Alternative Dispute Resolution Agreement (hereinafter "ADR Agreement") as Plaintiff's "Legal Representative." *See* Voluntary Alternative Dispute Resolution Agreement P. 4. In addition, Nancy Walton signed the following forms on Plaintiff's behalf: A HIPPA Disclosure form; a Medicare Rights form; a receipt of Valuables form; and consent forms for a bronchoscopy, a blood transfusion, and a transfer to Albert Einstein Medical Center.

Despite the fact that Plaintiff's mother signed the aforementioned documents presented to her by representatives of Kindred, Plaintiff never gave her mother power of attorney and never authorized her mother to make decisions on Plaintiff's behalf. Additionally, Nancy Walton has never been granted authority by a court to act on her daughter's behalf. Nancy Walton does not recall signing the ADR Agreement nor does she recall anyone from Kindred Hospital Philadelphia explaining the ADR Agreement to her or asking whether she had power of attorney. Finally, Nancy Walton was under the impression that she was merely signing documents that gave Kindred Hospital Philadelphia permission to treat Plaintiff and contends that if she had been advised otherwise, she would have refused to sign any documents waiving Plaintiff's right to a jury trial.

During Plaintiff's stay at Kindred Hospital Philadelphia, she had no understanding of who was handling her admission paperwork. Nancy Walton never men-

tioned anything to Plaintiff about signing paperwork at Kindred Hospital Philadelphia. Plaintiff never read the ADR Agreement nor was she made aware of the significance of the Agreement. In fact, Plaintiff was not aware that the Agreement included a waiver of her right to a jury trial until two years after Plaintiff was discharged. Moreover, Plaintiff was never asked to sign an ADR Agreement during her stay at Kindred Hospital Philadelphia.

Pa.R.A.P. 1925(a) Opinion at 1–4.

On January 12, 2012, two years after her return to Robert Wood Johnson emergency room for follow-up treatment, Lakeysha Walton filed suit against Robert Wood Johnson and Kindred.[1] Kindred filed Preliminary Objections seeking to have the matter removed to arbitration, pursuant to the ADR Agreement. Following discovery on the issue of authority to execute the ADR Agreement, the parties submitted briefs in support of their respective positions. The trial court overruled Kindred's Preliminary Objections and this timely appeal followed.[2]

The question at issue here is whether the ADR Agreement is enforceable.[3] The answer is dependent upon whether Nancy Walton was acting as Lakeysha Walton's agent when she signed the document.

An agency relationship may be created by any of the following: (1) express authority, (2) implied authority, (3) apparent authority, and/or (4) authority by estoppel. Express authority exists where the principal deliberately and specifically grants authority to the agent as to certain matters. *See Bolus v. United Penn Bank,* 363 Pa.Super. 247, 525 A.2d 1215 (1987). Implied authority exists in situations where the agent's actions are "proper, usual and necessary" to carry out express agency. *See Passarelli v. Shields,* 191 Pa.Super. 194, 156 A.2d 343 (1959). Apparent agency exists where the principal, by word or conduct, causes people with whom the alleged agent deals to believe that the principal has granted the agent authority to act. *See Turner Hydraulics v. Susquehanna Construction Co.,* 414 Pa.Super. 130, 606 A.2d 532 (1992). Authority by estoppel occurs when the principal fails to take reasonable steps to disavow the third party of their belief that the purported agent was authorized to act on behalf of the principal. *See Turnway Corp. v. Soffer,* 461 Pa. 447, 336 A.2d 871 (1975).

Lakeysha Walton was comatose when she was transferred to Kindred. As such, it is clear that she could not authorize her own treatment nor could she grant authority to anyone else. However, the evidence of record shows that an individual, Joanne

---

1. Following Preliminary Objections, Robert Wood Johnson was dismissed from the lawsuit with prejudice on jurisdictional grounds. That decision has not been appealed and is not part of this decision.

2. Both the trial court and Appellee argue the appeal should be quashed as interlocutory. However, Kindred correctly notes that pursuant to 42 Pa.C.S. § 7320(a)(1), an order denying an application to compel arbitration is immediately appealable. Kindred also cites Pa.R.A.P. 311(a)(9) regarding orders made appealable by statute. We note this rule was renumbered effective February 13, 2012 and

is currently found at Pa.R.A.P. 311(a)(8). There is no longer a Rule 311(a)(9).

3. "It is black letter law that in order to form an enforceable contract, there must be an offer, acceptance, consideration, or mutual meeting of the minds." *Jenkins v. County of Schuylkill,* 441 Pa.Super. 642, 658 A.2d 380, 383 (1995). It is obvious that there was no meeting of the minds with Lakeysha Walton, as she was comatose when the agreement was signed. Therefore, the agency relationship with her mother, or lack thereof, is of paramount importance.

Baker, signed the original ·admission agreement. *See* Deposition of Nancy Walton, 4/16/12, at 15. While Baker was raised with Lakeysha Walton, and the two treat each other as sisters, they are not related. *Id.* at 15–16. Baker signed the admission documents as best friend/sister. *Id.* at 16. Approximately two weeks later, Kindred asked Nancy Walton to sign additional paperwork regarding her daughter's admission.

■ Kindred concedes that Nancy Walton presented no written documentation evidencing her authority to act as her daughter's agent, such as a power of attorney or an advance health care directive.

An agent cannot simply by his own words, invest himself with apparent authority. Such authority emanates from the action of the principal and not the agent.

*Turnway,* 336 A.2d at 876.

■ Further,

The relationship of agency cannot be inferred from mere relationship or family ties unattended by conditions, acts or conduct clearly implying an agency.

*Sidle v. Kaufman,* 345 Pa. 549, 29 A.2d 77, 81 (1942).

Nor did Kindred seek to have Lakeysha Walton declared an incapacitated person and a guardian appointed pursuant to 20 Pa.C.S. § 5511.

■ Rather, Kindred claims they properly relied on Nancy Walton's actions on the grounds of apparent agency and authority by estoppel.

Our review of a claim that the trial court improperly denied [the] appellant's preliminary objections in the nature of a petition to compel arbitration is limited to determining whether the trial court's findings are supported by substantial evidence and whether the trial court abused its discretion in denying the petition.

*Gaffer Ins. Co., Ltd. v. Discover Reinsurance Co.,* 936 A.2d 1109, 1112 (Pa.Super.2007).

"The basic elements of agency are the manifestation by the principal that the agent shall act for him, the agent's acceptance of the undertaking and the understanding of the parties that the principal is to be in control of the undertaking." *Lapio v. Robbins,* 729 A.2d 1229, 1234 (Pa.Super.1999) (citation omitted). The creation of an agency relationship requires no special formalities. *Lincoln Avenue Indus. Park v. Norley,* 450 Pa.Super. 621, 677 A.2d 1219, 1222 (1996). The existence of an agency relationship is a question of fact. *Volunteer Fire Co. v. Hilltop Oil Co.,* 412 Pa.Super. 140, 602 A.2d 1348, 1351 (1992). The party asserting the existence of an agency relationship bears the burden of proving it by a fair preponderance of the evidence. *Id.* "In establishing agency, one need not furnish direct proof of specific authority, provided it can be inferred from the facts that at least an implied intention to create the relationship of principal and agent existed." *Commonwealth v. Maker,* 716 A.2d 619, 623 (Pa.Super.1998), appeal granted, 555 Pa. 475, 725 A.2d 175 (1999)[4]. However, we do not assume agency by a mere showing that one person does an act for another. *Ferry v. Fisher,* 709 A.2d 399, 405 n. 5 (Pa.Super.1998).

*B & L Asphalt Industries, Inc. v. Fusco,* 753 A.2d 264, 269 (Pa.Super.2000).

■ The trial court accurately analyzed the issue in its Rule 1925(a) Opinion.

4. Affirmed, Per Curiam, 563 Pa. 454, 761 A.2d 1167 (2000).

Here, Appellants have similarly failed to satisfy the burden of establishing an agency relationship. First, the Appellants have offered no evidence of a writing expressly granting Nancy Walton actual authority. Second, Appellants have not produced any evidence demonstrating that Plaintiff was aware of the ADR clause, authorized her mother to sign the agreement, or otherwise agreed to arbitrate any disputes. Moreover, Appellants were aware that Plaintiff was in a coma upon her admission to Kindred Hospital Philadelphia and have failed to offer any evidence of Plaintiff's conduct at the time the ADR Agreement was executed. On the contrary, the deposition testimony of both Plaintiff and her mother clearly and unequivocally indicates the Plaintiff was not aware of the arbitration clause, did not authorize her mother to sign the ADR Agreement, or otherwise agree to arbitrate any disputes. As such, no agency relationship existed between Plaintiff and her mother. Therefore, Plaintiff's mother did not have authority to sign the ADR Agreement.

Pa.R.A.P. 1925(a) Opinion, at 8.

 Agency by estoppel, as applied to the facts of this case, is essentially a determination of agency by after-the-fact actions by the principal. Agency by estoppel contains the elements that the principal intentionally or carelessly caused a third party to believe an agency relationship existed, or knowing that the third party held such a belief, did not take reasonable steps to clarify the facts. *See* Restatement (Second) of Agency, Section 8(B); *Turnway, supra.* Additionally, there must

be justifiable reliance by the third party. *Id.*

 To this end, Kindred argues because Lakeysha Walton ratified her mother's agency for purposes of consenting to medical treatment, she is estopped from denying agency on this issue of the ADR Agreement. "Lakeysha herself testified in her deposition that she assumed that family members, specifically her mother, would make decisions about 'consenting to procedures' in the event she was unable to make decisions on her own." *See* Appellant's Brief at 16. Our review of the certified record leads us to agree that Lakeysha Walton *may* be estopped from denying agency regarding her mother's consent for *medical treatment,* even though she had not signed a health care directive or power of attorney. However, the ADR Agreement specifically states that needed medical services are not conditioned upon signature of the Agreement.[5] *See* ADR Agreement, ¶ IV. Therefore, the ADR Agreement cannot be construed to have anything to do with "consenting to procedures." Rather than demonstrating her ratification of agency in this matter, as suggested by Kindred's argument, Lakeysha Walton's testimony only demonstrates she assumed her mother would act in her best interest regarding medical decisions.

Therefore, to prevail on a claim of agency by estoppel on the issue of authority to sign the ADR Agreement, Kindred must prove by a fair preponderance of the evidence that either: (1) there was some carelessness or negligence on the part of Lakeysha Walton that allowed Kindred to rely on the waiver or (2) she did not take reasonable steps, knowing that Kindred

5. Because treatment is not conditioned upon signing the ADR Agreement and the Agreement itself appears to be a document that stands apart from the admission/treatment agreement, it is unclear what consideration exists to make this an enforceable agreement. However, that issue is not before us.

was relying on the waiver, to correct their belief.[6]

First, Kindred argues that it is not necessary to show Lakeysha Walton knew about the waiver to show agency by estoppel. This assertion is based on the statement, "agency or authority by estoppel arises in cases where the principal, by his culpable negligence, permits his agent to exercise powers not granted to him, even though the principal has no knowledge or notice of the conduct of the agent[.]" *Reifsnyder v. Dougherty*, 301 Pa. 328, 152 A. 98, 100 (1930). This statement is not part of the holding by our Supreme Court. Rather, it represents the argument of the appellants who sought to show an agency relationship between a parish priest and Cardinal regarding building materials for a Montgomery County church. In analyzing the claim our Supreme Court stated, "Where an agent exceeds his authority, and this is known or should be known by the principal, an agency may be created by apparent authority as to such acts; but in such instances the relation of the principal and agent is already established for some purpose." *Id.* at 101.

Here, assuming an agency relationship for the determination of medical care, Kindred must show that Lakeysha Walton knew or should have known that her mother had signed away her legal rights. The certified record is devoid of such a showing.

Lakeysha Walton was comatose when she arrived at Kindred and at some point during her stay she regained consciousness, but the documents were not presented to her to ratify or execute, although the record is unclear as to her capacity to comprehend the documents. *See* Deposition of Lakeysha Walton, 4/16/12, at 9–10.

Further, Nancy Walton testified she did not speak to her daughter about the papers she had signed. She also testified she believed the documents directly addressed the care for her daughter and that the import of the ADR Agreement was not explained to her. Lakeysha Walton testified that she assumed her mother would make the necessary decisions regarding her medical care, not legal determinations. Kindred presented no evidence to the contrary. The ADR Agreement contains a signature line indicating receipt of a copy of the document. That line is blank. Therefore, Kindred has presented no evidence that Lakeysha Walton knew or should have known about the waiver after-the-fact or that her mother might have exceeded her authority in signing the Agreement. Kindred has presented nothing to suggest that a waiver of jury trial was something that a patient should anticipate upon admission to the facility. In light of this, Kindred has not shown what reasonable steps Lakeysha Walton should have taken, but did not, in order to avoid a finding of agency by estoppel. Because there is no showing Lakeysha Walton knew or should have known about the ADR Agreement, she cannot have been negligent either for failing to repudiate her mother's actions or for failing to take reasonable steps to notify Kindred that reliance on the Agreement was improper.

---

**6.** Kindred cites *Chighizola v. Beverly Enterprises Inc.*, 79 Pa. D. & C.4th 416 (2006) for the proposition that a person cannot "in hindsight ... narrowly pick which documents the agent did not have the authority to authorize." *Id.* at 422. An important difference between *Chighizola* and the instant matter is that the authority in *Chighizola* was express.

The decedent in that matter expressly granted her daughter the authority to sign the admission forms as well as Trust Fund Authorization forms. There was no express or apparent authority granted in this matter. The existence and extent of authority granted by estoppel, in this situation, is by necessity determined in hindsight.

Therefore, Kindred cannot prevail on an assertion of agency by estoppel.

Having found no error of law or abuse of discretion, we affirm the order overruling Kindred's preliminary objections.

Order affirmed. Motion to quash denied.

Judgement Entered.