J-A14010-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| JOSEPH BURNS AND DAWN BURNS, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| PHILLY TRAMPOLINE PARKS, DELCO, LLC; D/B/A SKY ZONE INDOOR TRAMPOLINE PARK, | |
| Appellant | No. 3544 EDA 2016 |

Appeal from the Order Entered October 18, 2016
In the Court of Common Pleas of Delaware County
Civil Division at No(s): 2016-3064

BEFORE:  BENDER, P.J.E., BOWES, J., and SHOGAN, J.

DISSENTING MEMORANDUM BY BOWES, J.:     **FILED OCTOBER 31, 2017**

As I believe that the admissions of Appellants establish that agency by implication applies herein, I would enforce the participation agreement that Dawn Burns signed on behalf of her husband Joseph Burns and would remand this matter to arbitration.

On May 11, 2014, Joseph and Dawn Burns and their son Shamus, entered the Sky Zone Indoor Trampoline Park ("Sky Zone"), which is owned and operated by Philly Trampoline Parks Delco, LLC.  Mr. Burns was allegedly injured on a trampoline that day.  In order to access Sky Zone and play on the trampolines, everyone was required to execute a participant agreement, which included an arbitration clause.  Mr. Burns claimed that he

did not sign the agreement in question and that it is therefore unenforceable against him. It was established that Ms. Burns completed the information on her husband's participation agreement and then affixed his name to it. I believe that she was operating as his agent when she performed these activities and that Mr. Burns' participation agreement is enforceable against him.

In **Petersen v. Kindred Healthcare, Inc.**, 155 A.3d 641, 645 (Pa.Super. 2017), we noted the "party asserting the existence of an agency relationship bears the burden of proving it by a fair preponderance of the evidence." As this Court outlined in **Walton v. Johnson**, 66 A.3d 782, 786 (Pa.Super. 2013), "An agency relationship may be created by any of the following: (1) express authority, (2) implied authority, (3) apparent authority, and/or (4) authority by estoppel." **Accord Washburn v. N. Health Facilities, Inc.**, 121 A.3d 1008 (Pa.Super. 2015). The "creation of an agency relationship requires no special formalities," and its existence is a question of fact. **Walton**, **supra** at 787. "In establishing agency, one need not furnish direct proof of specific authority, provided it can be inferred from the facts that at least an implied intention to create the relationship of principal and agent existed." **Id**. Comment b to Restatement (Second) of Agency § 1 (emphasis added) sets forth, "To constitute the relation, there must be an agreement, but not necessarily a contract, between the parties; if the agreement results in the **factual relation** between them to which are

attached the legal consequences of agency, an agency exists although the parties did not call it agency and did not intend the legal consequences of the relation to follow." Accordingly, the relationship can be inferred from the circumstances of the case by looking at factors such as the relationship of the parties and their conduct. *Scott v. Purcell*, 415 A.2d 56, 60 n. 8 (Pa. 1980). *Accord Wisler v. Manor Care of Lancaster PA, LLC*, 124 A.3d 317, 323 (Pa.Super. 2015) ("we look to facts to determine whether the principal expressly or impliedly intended to create an agency relationship"). "To that end, family ties may be relevant when considered with other factors evincing agency." *Id*. (citing *Sidle v. Kaufman*, 29 A.2d 77, 81 (Pa. 1942)). Moreover, "While the marital status in itself does not give rise to an agency relationship, it is competent evidence when considered with other circumstances as tending to establish that one spouse was agent for the other. *Croft v. Malli*, 105 A.2d 372, 376 (Pa. 1954) (quoting Restatement of Agency, § 22, comment (b),

In my view, the facts, the relationship between the parties, and the circumstances establish that Ms. Burns operated as an agent for her husband when she signed the agreement in question. On the date in question, Mr. Burns, together with his wife and son Shamus, entered Sky Zone. He asked an employee where the bathroom was located, and he promptly proceeded to that facility. Supplemental Memorandum of Law in Further Support of Preliminary Objections to the Complaint, 9/12/16, at

Exhibit A (Deposition of Joseph Bums) at 19-20 ("Exhibit A"). Ms. Burns remained at the counter and was informed by the Sky Zone employee that, in order to enjoy the trampoline facilities, all participants were required to execute a participation agreement. Supplemental Memorandum of Law in Further Support of Preliminary Objections to the Complaint, 9/12/16, at Exhibit B (Deposition of Dawn Bums) at 19-20 ("Exhibit B").

Agreements were completed and executed at kiosks near the counter, but the employees at the counter could not view the completion of the forms from their location. Ms. Burns went to the kiosk, read and filled out Mr. Burns' participation agreement, as well as the one pertaining to Shamus, and executed the agreements for them. The language in the relevant agreement stated that Joseph Burns had read and completed the agreement.

Ms. Burns returned to the counter, and the Sky Zone employee asked her for the names on the agreement; Ms. Burns told the employee that Joseph Burns and Shamus Burns had signed the agreement. Exhibit B at 17. The employee then typed the names into the computer. Supplemental Memorandum of Law in Further Support of Preliminary Objections to the Complaint, 9/12/16, Exhibit 13 at 12.

Nothing would have alerted Sky Zone to the fact that Ms. Burns signed Mr. Burns' name on his participation agreement. While Ms. Burns testified that the employee behind the counter saw her walk over to the kiosk, Exhibit

B at 18, Sky Zone established that an employee working behind the counter cannot observe what a guest is typing due to the distance between the counter and the fact that the kiosk computer screens faced away from the counter. Supplemental Memorandum of Law in Further Support of Preliminary Objections to the Complaint, 9/12/16, Exhibit D (Deposition of Ann Nicole Atkinson) at 21-22.

At his deposition, Mr. Burns reported that he was unaware that his wife had signed the participation agreement for him. Exhibit A, at 25. He did admit that she "usually handles that stuff." *Id*. at 13. Additionally, Mr. Burns understood that his participation agreement was completed and executed so that he could participate in Sky Zone trampoline activities, he was not upset with his wife for signing the agreement, and he admitted that, if Ms. Burns had not signed the agreement for him, he would have signed it in order to participate in Sky Zone trampoline activities. *Id*. at 34, 26. Mr. Burns voluntarily decided to utilize the trampoline at the Sky Zone establishment, and readily could have refused to enjoy that activity if he did not like the participation agreement. Exhibit A at 27.

Mr. Burns openly admitted that, when the family engaged in recreational activities, Ms. Burns "normally handles that stuff." Exhibit A at 13. Thus, in connection with the allocation of the marital duties, Ms. Burns had the authority to handle paperwork and take care of ensuring her husband's participation in recreational events. In this case, that process

included reviewing and signing the participation agreement. These facts and circumstances, as well as the family ties and, specifically, the spousal relationship between Mr. and Ms. Burns, establish that Ms. Burns had implied authority. This authority was a component of her express authority, delegated to her by Mr. Burns, to perform the actions necessary to schedule and ensure the family could enjoy recreational activities together. Hence, I respectfully dissent from the Majority's disposition of this matter.