J-A08039-18

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| ELIZABETH A. GROSS, ADMINISTRATRIX FOR THE ESTATE OF EUGENE R. GROSS, SR., DECEASED, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| GENESIS HEALTHCARE, INC., 350 HAWS LANE OPERATIONS, LLC D/B/A HARSTON HALL, 650 EDISON AVENUE OPERATIONS, LLC D/B/A SOMERTON CENTER, GENESIS HEALTHCARE, LLC, CENTER MANAGEMENT GROUP, LLC, 10400 ROOSEVELT OPERATING, LLC D/B/A ST. JOHN NEUMANN CENTER FOR REHABILITATION AND HEALTHCARE, 10400 ROOSEVELT LOT, LLC, 10400 ROOSEVELT REALTY, LLC, 10400 ROOSEVELT VENTURES, LLC, CHARLES-EDOUARD GROS, MOSHE ROSENBERG AND CAROLYN BOEHM | |
| APPEAL OF: 10400 ROOSEVELT REALTY, LLC, 10400 ROOSEVELT LOT, LLC, 10400 ROOSEVELT VENTURES, LLC, CENTER MANAGEMENT GROUP, 10400 ROOSEVELT OPERATING LLC D/B/A ST. JOHN NEUMANN CENTER FOR REHABILITATION AND HEALTHCARE, CHARLES-EDOUARD GROS, MOSHE ROSENBERG AND CAROLYN BOEHM | No. 2022 EDA 2017 |

Appeal from the Order Entered June 8, 2017
in the Court of Common Pleas of Philadelphia County
Civil Division at No(s): December Term, 2016 No. 00910

BEFORE:    PANELLA, LAZARUS, and STRASSBURGER,* JJ.

MEMORANDUM BY STRASSBURGER, J.:    **FILED MAY 30, 2018**

*Retired Senior Judge assigned to the Superior Court.

10400 Roosevelt Realty, LLC, 10400 Roosevelt Lot, LLC, 10400 Roosevelt Ventures, LLC, Center Management Group, 10400 Roosevelt Operating LLC d/b/a St. John Neumann Center for Rehabilitation and Healthcare, Charles-Edouard Gros, Moshe Rosenberg, and Carolyn Boehm (collectively, the Facility) appeal from the June 8, 2017 order overruling the Facility's preliminary objections in the nature of a motion to compel arbitration.[1]  We affirm.

Eugene R. Gross, Sr. (Decedent) passed away on June 3, 2016.  This action involves claims of negligence relating to care rendered to Decedent during his stay as a patient at three different nursing homes, including his stay at the Facility between March 16, 2015, and April 29, 2015.

On March 16, 2015, Decedent was admitted directly to the Facility's dementia unit.  A week and a half after Decedent's admission, on March 26, 2015, Elizabeth A. Gross (Gross), who is Decedent's wife, signed two interrelated agreements at the Facility's request (collectively, the Agreements).  The first agreement relates to Decedent's short-term rehabilitative stay at the Facility (Admission Agreement).  The Admission Agreement purports to make the following parties to the agreement: the Facility, Decedent (known in the agreement as "Resident"), and Gross as

---

[1] "An order overruling preliminary objections seeking to compel arbitration is immediately appealable as an interlocutory appeal as of right pursuant to 42 Pa.C.S.[] § 7320(a) and Pa.R.A.P. 311(a)(8)." *Petersen v. Kindred Healthcare, Inc.*, 155 A.3d 641, 644 n.1 (Pa. Super. 2017).

Decedent's "representative," (known in the agreement as "Responsible Person"). Admission Agreement, 3/26/2015, at 1. Decedent did not sign the Admission Agreement.

*Inter alia*, the Admission Agreement details the nature of the services provided and the resident's financial obligations. Relevant to this appeal, the Admission Agreement also contains an arbitration clause (Arbitration Clause), which requires the parties to submit to arbitration all disputes relating to the Admission Agreement, with the exception of guardianship proceedings and disputes involving amounts in controversy less than $8,000. Admission Agreement, 3/26/2015, at 6-11. Finally, the Admission Agreement has a clause relating to the "Obligations of the Responsible Person." ***Id.*** at 2. This clause provides that

> Resident has a right to identify a Responsible Person (usually the Agent in the Resident's Power of Attorney or Guardian), who shall be entitled to receive notice in the event of transfer or discharge or material changes in the Resident's condition, and changes to this Agreement. Resident elects to name [Gross] of [Address], as the Responsible Person. The Resident's selected Responsible Person shall sign this Agreement and the Responsible Person Agreement in recognition of this designation with the intent to be legally bound by all provisions in this Agreement except as modified by the Responsible Person Agreement.

***Id.***

Gross also signed a second agreement (Responsible Person Agreement), the purpose of which is "to facilitate the provision of care to [Decedent]." Responsible Person Agreement, 3/26/2015, at 1. The parties

- 3 -

to the Responsible Person Agreement are Gross and the Facility. ***Id.*** Decedent did not sign this agreement. Essentially, the Responsible Person Agreement obligates the Responsible Person to fulfill the duties of the Resident under the Admission Agreement, most of which are financial in nature, and subjects the Responsible Person to liability for failure to do so.

On December 12, 2016, Gross, in her capacity as administratrix of Decedent's estate, filed a complaint against the two sets of entities that own and operate the nursing homes.[2] After reinstatement of the complaint, the Facility filed preliminary objections on January 30, 2017, seeking, *inter alia*, to enforce the Arbitration Clause in the Admission Agreement. Gross filed an answer asserting, *inter alia*, that the Arbitration Clause was invalid because Decedent did not sign the Admission Agreement and Gross lacked authority to bind Decedent to arbitration. The trial court ordered discovery relating to the existence of a valid agreement to arbitrate pursuant to Pa.R.Civ.P. 1028(c). Following argument and the submission of briefs, the trial court overruled the preliminary objections on June 8, 2017.

The Facility timely filed a notice of appeal. The trial court did not order the Facility to file a concise statement of errors complained of on appeal, and

---

[2] The other set of defendants, Genesis Healthcare, Inc., 350 Haws Lane Operations, LLC d/b/a Harston Hall, 650 Edison Avenue Operations, LLC d/b/a Somerton Center, and Genesis Healthcare, LLC (collectively, Genesis) filed their own set of preliminary objections, which the trial court overruled. Genesis appealed at 2251 EDA 2017, but the appeal was discontinued upon the praecipe for discontinuance filed by Genesis on February 18, 2018. Genesis has not participated in the instant appeal.

none was filed. The trial court filed an opinion pursuant to Pa.R.A.P. 1925(a) directing us towards its June 8, 2017 memorandum in support of its order overruling the preliminary objections.

The Facility asks this Court to resolve the following question on appeal.[3]

1. Did the trial court err and abuse its discretion by overruling [the Facility's] preliminary objections in the form of a motion to compel arbitration, as (1) there is a binding and valid agreement to arbitrate signed by Decedent's wife with his authority and as his agent, and (2) the claims of Decedent and his estate fall within the scope of the arbitration provision?

The Facility's Brief at 4 (trial court's answers and unnecessary articles omitted; some capitalization altered).

"[O]ur review of a claim that the trial court improperly denied preliminary objections in the nature of a petition to compel arbitration is limited to determining whether the trial court's findings are supported by substantial evidence and whether the trial court abused its discretion in denying the petition." **Petersen**, 155 A.3d at 644. "We employ a two-part test to determine whether the trial court should have compelled arbitration: [(1)] whether a valid agreement to arbitrate exists, and [(2)] whether the dispute is within the scope of the agreement." **Washburn v. Northern Health Facilities, Inc.**, 121 A.3d 1008, 1012 (Pa. Super. 2015).

---

[3] The Facility also asks this Court to decide whether the Arbitration Clause in the Admission Agreement is unconscionable or a contract of adhesion. The Facility's Brief at 4. Because we hold that there is no enforceable agreement to arbitrate between the Facility and Decedent, we need not reach the second issue the Facility presents.

- 5 -

The dispute in the instant case focuses on the validity of the Arbitration Clause in the Admission Agreement – *i.e.*, the first part of the two-part test. Our case law makes clear that "[a]rbitration is a matter of contract, and parties to a contract cannot be compelled to arbitrate a given issue absent an agreement between them to arbitrate that issue." ***Civan v. Windermere Farms, Inc.***, 180 A.3d 489, 494 (Pa. Super. 2018). Whether an agreement to arbitrate exists is a question of law. ***Provenzano v. Ohio Valley Gen. Hosp.***, 121 A.3d 1085, 1095 (Pa. Super. 2015). Thus, our standard of review over this issue is *de novo* and our scope is plenary. ***Petersen***, 155 A.3d at 644.

Decedent did not sign the Admission Agreement. Therefore, in order for the Arbitration Clause to be binding on Decedent's estate, an agency relationship between Gross and Decedent must have existed at the time Gross signed the Admission Agreement. "Agency is a relationship whereby the principal manifests assent that another person (the agent) will act on the principal's behalf subject to the principal's control, and the agent agrees to do so." ***Wisler v. Manor Care of Lancaster PA, LLC***, 124 A.3d 317, 323 (Pa. Super. 2015).

> [A]n agency relationship may be created by any of the following: (1) express authority, (2) implied authority, (3) apparent authority, and/or (4) authority by estoppel.
>
> > Express authority exists where the principal deliberately and specifically grants authority to the agent as to certain matters. Implied authority exists in situations where the agent's actions are "proper,

usual and necessary" to carry out express agency. Apparent agency exists where the principal, by word or conduct, causes people with whom the alleged agent deals to believe that the principal has granted the agent authority to act. Authority by estoppel occurs when the principal fails to take reasonable steps to disavow the third party of their belief that the purported agent was authorized to act on behalf of the principal.

The party asserting the existence of an agency relationship bears the burden of proving it by a fair preponderance of the evidence.

*Petersen*, 155 A.3d at 645 (citations omitted).

The Facility first contends that Gross had Decedent's express, implied, and apparent authority to enter into the Admission Agreement and bind Decedent to the Arbitration Clause. The Facility's Brief at 32-48. To support its contention, the Facility focuses on Gross's marital relationship to Decedent and Decedent's dementia. *Id.* at 33-34, 38-39, 47-48. The Facility acknowledges that Decedent was not qualified to execute the Admission Agreement due to his dementia. *Id.* at 34. The gist of the Facility's argument is that because Decedent could not sign the Admission Agreement, "clearly someone – his wife – had the authority to execute this contract on his behalf." *Id.*

The Facility's bald statement has no basis in law. Agency is not assumed merely because one person does an act for another. *Walton v. Johnson*, 66 A.3d 782, 787 (Pa. Super. 2013) (holding that Walton was not bound by an arbitration agreement her mother signed on her behalf while Walton was comatose, as the facility did not establish that Walton authorized

her mother to act as her agent). Moreover, "[i]t is well settled that neither a husband nor wife has the power to act as agent for the other merely due to the marriage relationship." **Washburn**, 121 A.3d at 1014. This does not change merely because Decedent was incapacitated. [4] **See id.** (holding that nursing home failed to establish authority of wife to bind husband, who had dementia, to arbitrate claims arising from husband's stay at nursing home).

The Facility's other arguments regarding express, implied, and apparent authority fail as well. The Facility contends that Decedent's grant of power of attorney to Gross in February 2016 confirms that Decedent approved of Gross's acting on Decedent's behalf at the time of his admission to the nursing home in March 2015. The Facility's Brief at 36-37, 42-43, 48. However, the Facility does not point us to any terms of the February 2016 power of attorney that demonstrate that Decedent intended the power of attorney to apply retroactively to ratify past actions by Gross on Decedent's behalf. **See Twp. of N. Fayette v. Guyaux**, 992 A.2d 904, 906 (Pa. Super. 2010) (rejecting Guyaux's argument that a power of attorney executed after

---

[4] If the Facility wished to bind Decedent to a legal agreement and Decedent did not have the capacity to enter into an agreement, the Facility needed to either (1) use reasonable diligence to ensure that Decedent had granted authority to an agent, **Bolus v. United Penn Bank**, 525 A.2d 1215, 1222 (Pa. Super. 1987), and have that agent execute an agreement on Decedent's behalf; or (2) seek to have Decedent declared an incapacitated person and a guardian appointed pursuant to 20 Pa.C.S. § 5511. **Walton**, 121 A.3d at 786-87.

Guyaux signed pleadings on his mother's behalf had the effect of ratifying these past actions).

The Facility next relies upon Gross's signing of the Responsible Person Agreement, arguing that by signing the agreement Gross "affirmed that she had the authority from [Decedent] to sign the paperwork on his behalf." The Facility's Brief at 35, 47-49. The Facility directs our attention to a clause in the Responsible Person Agreement, wherein Gross represented that she was Decedent's guardian or Decedent's agent pursuant to a power of attorney, had Decedent's authorization to execute the Admission Agreement, or previously had Decedent's authorization to act as his agent. *Id.* at 49; *see* Responsible Person Agreement, 3/26/2015, at 4.

However, the flaw in the Facility's argument is that Decedent was suffering from dementia, and there is no evidence in the record that Decedent had any awareness of the Agreements. Decedent did not sign the Agreements. Decedent was not present while Gross signed the Agreements. Gross Deposition, 4/26/2017, at 77. Gross "might have mentioned [signing the Agreements] to [Decedent], but it went over his head." *Id.* at 78. While the Admission Agreement claims that Decedent selected Gross as his Responsible Person, only Gross signed the Admission Agreement, and she did so in her capacity as the Responsible Person. "An agent cannot simply by h[er] own words, invest [her]self with apparent authority. Such authority emanates from the action of the principal and not the agent." *Wisler*, 124

A.3d at 324. Thus, even if Gross represented that Decedent authorized her to sign the Admission Agreement or serve as his Responsible Person, the Facility did not point to any words or actions by **Decedent** that led it to believe that he had invested Gross with such authority. ***See id.***

While the Facility emphasizes Gross's management of Decedent's "personal, financial[,] and business affairs" after Decedent had a mini-stroke in 2014 prior to Decedent's admission at the Facility, ***see*** the Facility's Brief at 36, these actions do not aid its contention that Gross had express, implied, or apparent authority. The Facility argues that because Gross "took over all the bills, dealt with Social Security and Medicare, filled out and signed [Decedent's] paperwork,[5] took control over [Decedent's] money and finances, … and made his medical appointments and accompanied him," this demonstrated that "Gross was managing all of [Decedent's] affairs and completing paperwork on his behalf with his knowledge, consent[,] and authority." ***Id.*** at 41, 46-49 (emphasis removed). Again, however, there is no evidence that Decedent authorized Gross to do these things, as opposed

---

[5] It is unclear to which paperwork the Facility is referring. Gross indicated that she signed consent forms when Decedent was admitted to a hospital in 2014 after suffering a stroke and at subsequent doctor's appointments. Gross Deposition, 4/26/2017, at 13, 18. She also stated that she would fill out and/or sign unspecified "paperwork" due to Decedent's health issues, but denied signing "legal documents." ***Id.*** at 16.

to Gross taking it upon herself to assist Decedent.[6]  ***See Washburn***, 121 A.3d at 1014 ("The flaw in [the nursing home's] position is that while there is evidence that Mrs. Washburn previously acted on her husband's behalf, the record is devoid of evidence that Mr. Washburn ever authorized his wife to do so."); ***Wisler***,  124 A.3d at 325 (dismissing nursing home's argument that son's actions on behalf of father, including being involved in prior hospital admissions, handling his banking, and paying his bills, indicated that son was his father's agent; "[a]gain, authority emanates from the principal's action, and not the agent's").

Even if Decedent had authorized Gross to manage certain aspects of his finances and healthcare, the Facility fails to convince us that this authorization constituted an express or implied grant of authority to manage his legal affairs, such that Gross was authorized to waive his constitutional right to a jury trial.  ***See Wisler***, 124 A.3d at 324 (distinguishing authority to consent to medical treatment and care from authority to consent to arbitration); ***Walton***, 66 A.3d at 788 (same).  A deliberate and specific grant of authority as to "certain matters" does not constitute a deliberate and specific grant of authority as to all matters.  ***Id.***

---

[6] For example, Gross stated that Decedent did not have control over his finances after he suffered a mini-stroke, and she "**was making sure** that all his bills were being paid.  Everything he had to get paid **I took over**." Gross Deposition, 4/26/2017, at 16 (emphasis added).

Moreover, nothing in Gross's deposition testimony or the affidavit of Patricia Prout, the Facility's admissions coordinator who met with Gross when she signed the Agreements,[7] indicates that at the time of signing the Facility was aware that Gross had been handling certain of Decedent's affairs.[8] Thus, for purposes of apparent authority, the Facility has no basis to contend that it was caused to believe that Decedent had granted Gross authority to act. *See Washburn*, 121 A.3d at 1015 (concluding that because there were no prior dealings between the decedent and the nursing home, and the nursing home was unaware that Washburn had been signing her husband's name to some documents, "it had no basis to infer that she was authorized to act on his behalf").

Thus, based on the foregoing, the trial court did not err in determining that Gross did not have express, implied, or apparent authority to bind Decedent to arbitration.

In addition to arguing that Gross had express, implied, and apparent authority to bind Decedent, the Facility also argues that Gross was Decedent's agent by estoppel. There are two basic elements to agency by

---

[7] Prout had no recollection of meeting with Gross and merely reviewed her custom and practice for admission in her affidavit. Trial Court Opinion, 6/8/2017, at 3-4.

[8] This is the case even though Gross did not tell Prout that she did not have authority to sign on Decedent's behalf. The Facility had a duty to exercise "reasonable diligence to ascertain the agent's authority." *Bolus*, 525 A.2d at 1222. There is no indication that Prout questioned Gross about her authority, let alone inquired about her handling of Decedent's affairs.

estoppel: "(1) there must be negligence on the part of the principal in failing to correct the belief of the third party concerning the agent; and (2) there must be justifiable reliance by the third party." ***Turnway Corp. v. Soffer***, 336 A.2d 871, 876 (Pa. 1975). For the doctrine to apply, the principal intentionally or carelessly must have caused a third party to believe an agency relationship existed, or must have known that the third party held such a belief without taking reasonable steps to clarify the facts. ***Petersen***, 155 A.3d at 647 (citing Restatement (Second) of Agency, Section 8(B)).

The Facility baldly asserts that Decedent was careless and negligent in allowing the Facility to believe Gross had authority to complete the enrollment process. The Facility's Brief at 51; The Facility's Reply Brief at 15. The Facility also contends that since Decedent received the benefits of the nursing home's services without repudiating the Admission Agreement, Decedent cannot now "pick and choose" which parts of the Admission Agreement he wants to enforce. ***Id.*** at 53.

Gross urges us to find waiver, stating that the Facility failed to preserve the arguments by not presenting them to the trial court. Gross's Brief at 18. In its reply brief, the Facility responds that these arguments are "merely part and parcel" of its other arguments, particularly apparent authority. The Facility's Reply Brief at 10. However, while agency by estoppel and apparent authority are similar, they are distinct doctrines. ***Jones v. Van Norman***, 522 A.2d 503, 511 (Pa. 1987). Furthermore, the

- 13 -

Facility's contention that Decedent's estate is estopped from disavowing the Arbitration Clause because Decedent accepted other benefits of the Admission Agreement is actually an equitable estoppel argument, another wholly distinct theory. **Petersen**, 155 A.3d at 646 (explaining that equitable estoppel is distinct from agency by estoppel and applies to prevent a party from assuming a position or asserting a right to another's disadvantage inconsistent with a position previously taken).

The trial court did not address agency by estoppel or equitable estoppel in its opinion. Moreover, the Facility did not present such theories in its preliminary objections, accompanying brief, or supplemental brief to the trial court. "A new argument cannot be raised in support of an issue on appeal if it was not first presented before the trial court." **Newman Dev. Grp. of Pottstown, LLC v. Genuardi's Family Mkt., Inc.**, 98 A.3d 645, 658 n.16 (Pa. Super. 2014); **see also** Pa.R.A.P. 302(a). Thus, we find that the Facility has waived its claim of agency by estoppel and equitable estoppel.[9]

Even if the Facility had not waived its claims of agency by estoppel and equitable estoppel, it has not convinced us that it is entitled to relief. Despite discussing its interpretation of the law regarding agency by estoppel

---

[9] The Facility also claims that Gross is a third-party beneficiary of the Admission Agreement. The Facility's Brief at 54. This claim is also waived, both because the Facility did not present this argument to the trial court in the first instance, and because it failed to develop the claim in its brief. **See** Pa.R.A.P. 302(a), 2119(a).

at length, the Facility's analysis of law as it applies to the facts of this case is lacking. Specifically, the Facility fails to explain how Decedent, despite suffering from dementia, somehow carelessly or negligently caused the Facility to believe an agency relationship existed such that Gross could bind him as to his legal affairs. *See Walton*, 66 A.3d at 789-90.

Furthermore, the Facility's argument that Decedent is picking and choosing certain parts of the Admission Agreement does not hold water. As explained *supra*, the Facility chose to enter into the Admission Agreement without seeking to obtain a guardian or use reasonable diligence to ensure that Gross had authority to bind Decedent. Again, there is no evidence that Decedent, who was suffering from dementia, ever knew Gross had signed any agreement on his behalf, including the Admission Agreement.

In sum, there is no enforceable arbitration agreement between the Facility and Decedent under any of the theories advanced by the Facility. "Despite national and state policies favoring arbitration, a party cannot be compelled to arbitrate in the absence of a valid agreement to do so under either Pennsylvania law or the Federal Arbitration Act." *Washburn*, 121 A.3d at 1016. Thus, we affirm the trial court's order overruling the Facility's preliminary objections in the nature of a motion to compel arbitration.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.

Prothonotary

Date: 5/30/18