MINORA, J.,
INTRODUCTION
Before the court is Northeastern Pennsylvania Council, Inc., Boy Scouts of America’s (“plaintiff’) motion for summary judgment to set aside a subordination agreement. Oral argument was held on April 7, 2015. This matter is therefore ripe for disposition. For the reasons that follow, plaintiff’s motion for summary judgment is denied.
FACTUAL AND PROCEDURAL HISTORY
This litigation involves a judicial tax sale for real property located in Moosic, Pennsylvania, more particularly described in Lackawanna County Tax Map No. 17703-020-00110 (“property”). The issue before the court, however, relates to two mortgage creditors with competing mortgage lien positions on the property.
The facts are as follows:[1] On September 18, 2003, *426 plaintiff entered into an agreement of Sale with Petroleum Services, L.L.C. (“Petroleum Services”) for the sale of the property, which is situated across the street from plaintiff’s property. Petroleum Services intended to undertake a land development project on the property to construct a gas station/mini mart with additional retail space, which would require additional financing. On the same day, plaintiff’s board passed a resolution which provides, in pertinent part:
The board hereby authorizes the council president and secretary scout executive to execute any and all documentation necessary to effectuate the terms and conditions of the sales agreement and financing of the parcel to Petroleum Services LLC.
(9/18/03 Board Meeting Minutes, at 3). On December 22, 2003, a mortgage was executed by and between plaintiff and Petroleum Services in the amount of $575,000. In order to facilitate additional financing for Petroleum Services, plaintiff agreed to subordinate its mortgage. On September 30,2004, plaintiff entered into a subordination agreement whereby Community Bank and Trust Company’s (“defendant”) mortgage of $2,097,000 was placed in senior position. As it stood, defendant’s mortgage interest was placed in first position, and superior to plaintiff’s junior mortgage lien.
*427 On June 9, 2005, Petroleum Services, along with RJM Realty Development, L.P. and RJM Group, LLC, submitted a commercial loan application seeking to refinance the original loan as well as additional financing from defendant in the amount of $3,650,000. On January 12, 2006, Petroleum Services sold the property to RTM Realty Development, L.P. for $675,000. On the same day, RJM Realty Development, L.P. entered into a mortgage agreement with defendant for the amount of $3,650,000. On January 26, 2006, the previous mortgage in favor of defendant for the amount of $2,097,000 was satisfied. Also in January, 2006, a second subordination agreement was executed giving priority of the mortgage liens back in favor of defendant. The agreement was signed by plaintiff’s president, Bryan Fisk.
On January 8, 2010, the Lackawanna County Tax Claim Bureau initiated this case by filing a Petition to Sell Tax Delinquent Property at Judicial Sale Free and Clear of All Liens and Encumbrances. On February 5, 2010, Lackawanna River Basin Sewer Authority filed an objection to Petition to Sell Tax Delinquent Property at Judicial Sale, Free and Clear of All Liens and Encumbrances. On February 19,2010, this court issued an order for judicial sale of the property scheduled to occur on February 22, 2010.
On March 30,2010, plaintiff filed a petition to set aside subordination agreement. On April 26,2010, Lackawanna County Tax Claim Bureau filed a petition for confirmation of the 2010 judicial tax sale and proposed distribution of *428 proceeds. On May 20, 2010, this court issued an order confirming the judicial sale that ultimately concluded on March 22, 2010, with defendant being the successful bidder in the amount of $700,000. On February 9, 2011, defendant filed a motion to strike petition to set aside subordination agreement. On June 22, 2011, this court issued an order denying defendant’s motion to strike petition to set aside subordination agreement. On February 11, 2015, plaintiff motioned for summary judgment. Oral argument was held on April 7, 2015, and this matter is now in a suitable position for disposition.
STANDARD OF REVIEW
A motion for summary judgment is governed by Pennsylvania Rule of Civil Procedure 1035.2, which provides:
After the relevant pleadings are closed, but within such time as not to unreasonably delay trial, any party may move for summary judgment in whole or in part as a matter of law
(1) whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report, or
(2) if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the *429 cause of action or defense which in a jury trial would require the issues to be submitted to a jury.
Pa. R.C.P. 1035.2. “Summary judgment is properly entered where the pleadings, depositions, answers to interrogatories, and admissions, together with affidavits, demonstrate that no genuine, triable issue of fact exists and that the moving party is entitled to judgment as a matter of law.” Singnorile v. Fernwood Hotel & Resort, 2014 WL 6755312, 1.
“Summary judgment may be granted only in cases where the right is clear and free from doubt.” Id. The moving party bears the burden of demonstrating there are no genuine issues of material fact. Id.; Stimmler v. Chestnut Hill Hosp., 602 Pa. 539, 554, 981 A.2d 145, 154 (2009); Abrams v. Pneumo Abex Corp., 2007 Pa. Super. 383, 939 A.2d 388, 390 (2007) rev’d on other grounds, 602 Pa. 627, 981 A.2d 198, 201 (2009); Jones v. Levin, 2007 Pa. Super. 412, 940 A.2d 451, 453 (2007). The record will be viewed in a light most favorable to the non-moving party, and any doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. McDonald v. Whitewater Challengers, Inc., 2015 PA Super 104 (Apr. 29, 2015). “All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party.” Singnorile, 2014 WL 6755312, 1. In response, the non-moving party may not rest upon the pleadings, but must set forth specific facts demonstrating a genuine issue for trial. Id.; Pa.R.C.P. 1035.3(a); DeSantis v. Frick Co., 1999 Pa. Super. 329, 745 A.2d 624, 625 (1999) (internal *430 citations omitted). “A general denial is unacceptable and deemed an admission where it is clear that the defendant has adequate knowledge and that the means of information are within the control of the defendant.” Singnorile, 2014 WL 6755312, 1. Determinations of credibility are for the fact finder. Jams v. AMP, Inc., 856 A.2d 140 (Pa. Super. 2004).
DISCUSSION
Plaintiff makes two separate contentions in favor of granting summary judgment and setting aside the subordination agreement. First, plaintiff argues that the subordination agreement should be stricken for lack of consideration. Plaintiff also claims that Mr. Fisk, plaintiff’s president, lacked authority to bind plaintiff to the agreement.
I. WHETHER THERE IS ANY GENUINE ISSUE OF MATERIAL FACT CONCERNING LACK OF CONSIDERATION FOR THE SUBORDINATION AGREEEMENT.
Plaintiff argues that the subordination agreement should be stricken for lack of consideration. Plaintiff asserts it was not paid any consideration, nor has it received any benefit associated with the subordination agreement. Plaintiff also contends there could not have been any ‘bargained-for-exchange’ between plaintiff and defendant because plaintiff was not contacted by the defendant regarding the second loan and had no knowledge of the loan. Moreover, the Uniform Written Obligations Act (“UWOA”) does not *431 apply to the instant case because the agreement does not contain an express statement that the signer intends to be legally bound.
Defendant argues that plaintiff received consideration for the second subordination agreement. Defendant points to the language in the subordination agreement which acknowledges receipt of consideration. Specifically, a clause in the agreement states that the plaintiff is in actual receipt of “consideration in the sum of One Dollar ($1.00) and other good and valuable consideration.” (2006 Subordination Agreement). Defendant elaborates on ‘other good and valuable consideration’ as encompassing the completion of the building on the property, which would greatly increase the value of plaintiff’s adjacent property and increase the equity available to secure plaintiff’s second-lien position. In support of this argument, defendant cites the depositions of President Fisk, Secretary/Scout Executive, and Executive Board Member Tressler. Most relevant was President Fisk’s statement regarding what the plaintiff stood to gain if the building was built on the property. He stated “[t]hat the project would be completed and that there was a likelihood that we would receive all of the moneys that were due us under the loan.” (Fisk Depo. at 81). Alternatively, defendant claims that pursuant to the UWOA, plaintiff expressly and statutorily waived the requirement for consideration because the agreement contained the following clause: “Subordinating party further agrees that...[t]his agreement shall be binding upon Subordinating party and the heirs, representatives, *432 successors and assigns of the Subordinating Party...”(2006 Subordination Agreement).
In order for a contract to be legally enforceable, there must be an offer, acceptance, and consideration. A.S. v. Office for Dispute Resolution (Quakertown Cmty. Sch. Dist.), 88 A.3d 256, 265-66 (Pa. Commw. Ct. 2014). “Consideration” consists of either a benefit to the promisor or a detriment to the promisee. Weavertown Transp. Leasing. Inc. v. Moran, 2003 PA Super 385, ¶ 9, 834 A.2d 1169, 1172 (2003). Pennsylvania appellate courts have concluded, however, that a detriment to the promisee alone may be insufficient. Stelmack v. Glen Alden Coal Co., 339 Pa. 410, 414, 14 A.2d 127, 128-29 (1940). Indeed, the Pennsylvania Supreme Court explained:
It is not enough, however, that the promisee has suffered a legal detriment at the request of the promisor. The detriment incurred must be the ‘quid pro quo’, or the ‘price’ of the promise, and the inducement for which it was made...
Id. Moreover, the question of whether a contract is supported by consideration presents a question of law. Pennsy Supply. Inc. v. Am. Ash Recycling Corp. of Pennsylvania, 2006 PA Super 54, ¶ 8, 895 A.2d 595, 601 (2006).
In the present case, there is express language in the contract acknowledging receipt of consideration. While not conclusive on the matter, it is some evidence that stands at odds with plaintiff’s contention. Moreover, defendant claims the loans would allow completion of the building *433 on the property, thereby increasing property value and increasing the equity available to secure plaintiff’s second-lien position. In support of this argument, defendant cites the depositions of President Fisk, Secretary/Scout Executive, and Executive Board Member Tressler for the proposition that the plaintiff stood to gain from the completion of the project, which required additional financing. Viewing the facts in a light most favorable to the non-moving party, this court finds plaintiff fails to meet its burden of proof that it is entitled to judgment as a matter of law. Defendant provided sufficient evidence and argument to rebut plaintiff’s contention, and plaintiff failed to make a showing that is clear and free from doubt. In cases of doubt, the matter must be resolved in favor of the non-moving party. McDonald. PA Super at *3; Singnorile, 2014 WL 6755312,1. As such, plaintiff’s summary judgment motion is denied as to the argument for lack of consideration.
Even assuming, arguendo, that plaintiff did not receive consideration, plaintiff must also prove the contract does not satisfy the requirements set forth in the UWOA. The UW O A provides:
A written release or promise, hereafter made and signed by the person releasing or promising, shall not be invalid or unenforceable for lack of consideration, if the writing also contains an additional express statement, in any form of language, that the signer intends to be legally bound.
*434 33 Pa. Cons. Stat. Ann. § 6 (West) (emphasis added). When the express language “intends to be legally bound” is used in a contract, courts have determined the contracts cannot be deemed invalid or unenforceable due to lack of consideration. Kay v. Kay, 460 Pa. 680, 684, 334 A.2d 585, 587 (1975) (finding a separation agreement that states the signer intends to be legally bound by the agreement is not rendered unenforceable by the absence of consideration); Rekas v. Dopkavich, 362 Pa. 292, 298, 66 A.2d 230, 233 (1949) (holding a written agreement signed under seal and containing recital by parties “declaring themselves legally bound” could not be avoided on ground that it was without consideration). When the language used in contracts strays away from the express language ‘intends to be legally bound,’ however, some courts have held the contract does not fall within the coverage of the UWOA. See, e.g., Gershman v. Metro. Life Ins. Co., 405 Pa. 585, 176 A.2d 435, 436-37 (1962) (finding that the words “[a]pproved by” followed by obligor’s signature did not satisfy the UWOA). Other courts have found such varying language amounted to an ‘additional express statement, in any form of language, that the signer intends to be legally bound’ provided for in the UWOA, and therefore need not meet the consideration requirement. See InterDigital Commc’ns Corp. v. Fed. Ins. Co., 392 F. Supp. 2d 707, 713 (E.D. Pa. 2005) (holding “the language, ‘this agreement shall run and be binding upon the respective Contracting Parties,’ is an additional express statement and is the form of language that clearly expresses an intent to be bound”).
*435 Instantly, plaintiff’s sole contention is that the contract does not include the express language the party intends to be legally bound. Such specific express language is not necessary; rather, it need only be an additional express statement in the form of language that clearly expresses an intent to be bound. Id. The clause in the contract at issue provides:
This agreement shall be binding upon Subordinating Party and the heirs, representatives, successors and assigns of Subordinating Party...
(2006 Subordination Agreement) (emphasis added). This court would be hard-pressed to make a finding that such a statement does not constitute an additional express statement in the form of language that clearly expresses an intent to be legally bound without the need for additional consideration. Indeed, the language ‘shall be binding upon Subordinating Party’ provides the same effect as ‘intends to be legally bound.’ Moreover, the language is analogous to the contract at issue in InterDigital Commc’ns Corp., where the court determined the statement satisfied the requirements of the UWOA. Id. (analyzing “this agreement shall run and be binding upon the respective Contracting Parties”). Therefore, we find the argument that the subordination agreement fails to satisfy the requirements of the UWOA equally unavailing and unpersuasive.
II. WHETHER THERE IS ANY GENUINE ISSUE OF MATERIAL FACT CONCERNING MR. FISK’S AUTHORITY TO BIND PLAINTIFF.
*436 Plaintiff also claims that Mr. Fisk, plaintiff’s president, lacked authority to bind plaintiff to the agreement. According to plaintiff, the authority provided to Mr. Fisk by the September 18, 2003 board resolution included only signing and effectuating documents associated with the sale of the property to Petroleum Services and a mortgage from the defendant in the amount of $2,070,000. Furthermore, because defendant had actual knowledge of the limited express authority given to Mr. Fisk, it cannot assert an expansion of authority by implication. Finally, plaintiff argues that there is no evidence of the creation of apparent authority because there was no manifestation of such by plaintiff. Thus, plaintiff believes the subordination agreement should be set aside.
Conversely, defendant argues that the signers of the subordination agreement possessed the authority to bind plaintiff to the agreement. Defendant claims the September 18,2003 resolution passed by plaintiff’s board authorized “the Council President and Secretary Scout Executive to execute any and all documents necessary to effectuate the terms and conditions of the sales agreement and financing of the parcel to Petroleum Services LLC.” Defendant also focuses on deposition testimony provided by plaintiff’s Executive Board Member David Tressler, who was in attendance at the meeting in which the resolution was passed, to establish that the resolution was deliberately broad in scope. Defendant likewise asserts that Mr. Fisk and Mr. Rogers both admitted during deposition that they believed they were authorized to sign *437 the 2006 Subordination Agreement at the time they signed it. Moreover, defendant claims Mr. Fisk and Mr. Rogers had implied authority to sign the subordination agreement because they were plaintiff’s same officers that were authorized to sign such documents that were necessary to effectuate the project and get the building built. Further, defendant argues that by allowing Mr. Fisk and Mr. Rogers to sign the earlier subordination agreement, plaintiff confirmed apparent authority for them to sign the latter subordination agreement as a necessary step of getting the project effectuated. Finally, defendant claims authority by estoppel applies to this case because defendant was expressly induced to act to its detriment based on plaintiff’s president and secretary/Scout Executive knowingly and deliberately executing the 2006 subordination agreement, and which President Fisk later reaffirmed in writing and under oath in 2010 prior to the Judicial Sale. Therefore, defendant believes the subordination agreement is valid and enforceable, and as such should remain intact.
It is well-settled law that agency is created through “the manifestation by the principal that the agent shall act for him, the agent’s acceptance of the undertaking and the understanding of the parties that the principal is to be in control of the undertaking.” Lapio v. Robbins, 1999 PA Super 106, ¶ 16, 729 A.2d 1229, 1234 (1999) quoting Bradney v. Sakelson, 325 Pa. Super. 519, 473 A.2d 189, 191 (1984). The inquiry as to whether an agency relationship exists is a question of fact. Volunteer Fire Co. of New Buffalo, A.2d at 1351 citing Bolus v. United *438 Penn Bank, 363 Pa. Super. 247, 259, 525 A.2d 1215, 1221 (1987). The case law likewise recognizes that “the nature and extent of an agent’s authority is a question of fact for the trier.” The reality that agency is a question of fact for the trier of fact makes it unsuitable as a basis for summaryjudgmentinthis case. Turner Hydraulics. Inc. v. Susquehanna Const. Corp., 414 Pa. Super. 130, 135, 606 A.2d 532, 534-535 (1992) citing Joyner v. Harleysville Insurance Co., 393 Pa. Super. 386, 574 A.2d 664, 668 (1990), appeal denied, 527 Pa. 587, 588 A.2d 510 (1990). Importantly, it is the party asserting an agency relationship that bears the burden of proving it by a fair preponderance of the evidence. Volunteer Fire Co. of New Buffalo, A.2d at 1351 citing Apex Financial Corp. v. Decker, 245 Pa. Super. 439, 443, 369 A.2d 483, 485 (1976).
Pennsylvania recognizes four types of authority an agent may possess: (1) express authority, (2) implied authority, (3) apparent authority, and/or (4) authority by estoppel. Walton v. Johnson, 2013 PA Super 108, 66 A.3d 782, 786 (2013); Volunteer Fire Co. of New Buffalo v. Hilltop Oil Co., 412 Pa. Super. 140, 146, 602 A.2d 1348, 1352 (1992). Express authority is found when “the principal deliberately and specifically grants authority to the agent as to certain matters.” Walton, A.3d at 786 citing Bolus, Pa. Super, at 260. Implied authority involves situations in which “the agent’s actions are ‘proper, usual and necessary’ to carry out express agency.” Walton, A.3d at 786 quoting Passarelli v. Shields, 191 Pa. Super. 194, 156 A.2d 343 (1959). Apparent authority “exists where a principal, by words or conduct, *439 leads people with whom the alleged agent deals to believe that the principal has granted the agent authority he or she purports to exercise.” Turner Hydraulics, Inc., A.2d at 534 citing Stallo v. Insurance Placement Facility of Pa., 359 Pa. Super. 157, 518 A.2d 827 (1986), appeal denied, 515 Pa. 609, 529 A.2d 1082 (1987). “Although a third party cannot rely on the apparent authority of an agent to bind a principal if he has knowledge of the limits of the agent’s authority, without such actual knowledge, the third party must exercise only reasonable diligence to ascertain the agent’s authority.” Bolus, 363 Pa. Super, at 261-62. (stating “[t]he third party is entitled to believe the agent has the authority he purports to exercise only where a person of ordinary prudence, diligence and discretion would so believe”). Finally, authority by estoppel occurs “when the principal fails to take reasonable steps to disavow the third parly of their belief that the purported agent was authorized to act on behalf of the principal.” Walton, A.3d at 786 citing Turnway Corp. v. Soffer, 461 Pa. 447, 336 A.2d 871 (1975).
In the present case, there is a genuine dispute of material fact as to whether President Fisk had the authority to bind plaintiff to the subordination agreement. First, there is a disagreement between the parties as to whether the September 18, 2003 board resolution provided the president express authority to bind plaintiff to the second subordination agreement. The language of the resolution itself is somewhat telling. It provides, in pertinent part:
The board hereby authorizes the Council President and Secretary Scout Executive to execute any and all *440 documentation necessary to effectuate the terms and conditions of the sales agreement and financing of the parcel to Petroleum Services LLC.
(9/18/03 Board Meeting Minutes, at 3) (emphasis added). Plaintiff’s own Executive Board Member, David Tressler, testified in deposition that he believed the authorization provided by the resolution included effectuating the land development project. (TresslerDepo. at23-28). Regardless, if there was a limitation imposed by the resolution, there is also a dispute as to whether the defendant had actual knowledge of such a limitation. Critically, “the nature and extent of an agent’s authority is a question of fact for the trier.” Turner Hydraulics, Inc., A.2d at 534-35. Viewing the facts in a light most favorable to the defendant, there is at least some evidence to support the finding that a reasonable person in the defendant’s position would believe President Fisk had the requisite authority to bind the plaintiff. Bolus, 363 Pa. Super, at 261-62. The court is, again, not convinced plaintiff has made a clear case that is free from doubt. Therefore, the motion for summary judgment as to President Fisk lacking authority to bind plaintiff is likewise denied.
An appropriate order follows.
ORDER
And now to wit, this 11th day of June, 2015, upon consideration of the motions, responsive pleadings, briefs, the trial record and the able verbal and written arguments of counsel for the parties regarding plaintiff’s motion *441 for summary judgment, it is hereby ordered and decreed that plaintiff’s motion for summary judgment and all its attendant requests for relief are denied.

. The factual background consists of amounts and dates for which there are contracts and other documentary proof. Other factual allegations disputed by the parties were omitted in accordance with parol evidence and statute of frauds rules. Although plaintiff made certain averments *426 regarding fraud, which could be an exception to the parol evidence rule, its brief in support of motion for summary judgment addresses two main issues: (1) lack of consideration; and (2) lack of agency, and we confine ourselves to those two issues.